672 P.2d 1064

Ben R. DRAKE and D.M. Downer, as individuals, and Snake River Valley Home Builders Association, an Idaho corporation, Plaintiff-Appellant,

v.

Ira L. CRAVEN, Earl Giles, Stan Pilcher, Commissioners of Canyon County, Idaho and Canyon County Planning and Zoning Commission, Defendants-Respondents.

No. 14077.

Court of Appeals of Idaho.

Oct. 11, 1983.

Rehearing Denied Dec. 22, 1983.
Petition for Review Denied
Feb. 9, 1984.

Jon N. Wyman, Wyman & Wyman, Boise, for plaintiff-appellant.

William B. Dillon, III, Deputy County Atty., Caldwell, for Canyon County.

WALTERS, Chief Judge.

Ben Drake appeals from a summary judgment which affirmed a denial by the Canyon County Commissioners of his application for rezoning. Drake presents four issues on appeal. First, Drake broadly argues that the district court should have granted him relief from the denial of his rezoning application by the Commissioners. Second, Drake contends that, in an interlocutory order, the district court should not have allowed the County Commissioners the option of either hearing the matter themselves on remand or of referring the matter to the county zoning commission. Third, Drake argues that the court should have held the county's zoning ordinance to be invalid, or unconstitutional as applied to his case. Fourth, Drake argues that the court erred in refusing to augment the record to include certain minutes of the planning and zoning commission. In addition, both parties request an award of attorney fees on appeal. We affirm the decision of the district court, and disallow the requests for fees.

Drake owns a parcel of land located in rural Canyon County. The land is bordered by a large dairy farm, by several small livestock feeding operations, and by a subdivision previously developed by Drake. The parcel in question is zoned for agricultural use.

In 1974, Drake filed an application to rezone the property for residential use, so that he could develop the property into a subdivision. At its January 15, 1975, meeting, the Canyon County Zoning Commission voted to recommend that Drake's application for rezoning be denied. On February 20, the Board of County Commissioners, sitting as a "board of adjustment" under the County's zoning ordinance, reviewed the zoning commission's recommendations. The board tabled Drake's application, apparently in anticipation of a county-wide moratorium on subdividing and rezoning land.

Drake then filed a complaint in district court alleging that the board had arbitrarily, capriciously and unlawfully refused to grant his application. Pursuant to stipulation of the parties, the district judge remanded the proceeding to the board, with directions to make findings of fact concerning Drake's application. Under the court's order the board was given discretion to base its findings either on the hearings previously held or on a new hearing to be held by the board. Thereafter the board held a second hearing on May 19, 1975. By written decision dated May 30, 1975, the board again denied Drake's request for rezoning.

Following this rehearing, the board moved for summary judgment on Drake's complaint in district court. The judge rejected Drake's arguments attacking the validity of the zoning ordinance but denied summary judgment to the board, holding that facts surrounding the rezoning request and denial had not been adequately present-

ed. The district court again remanded the matter to the board of county commissioners for rehearing either before that board or before the zoning commission, at the option of the County Commissioners, with specific instructions on the manner in which a rehearing was to be held.

The rehearing ordered by the court was held by the board of commissioners on December 11, 1979, in the manner specified. The board heard testimony from Drake, from several residents of the area surrounding the proposed subdivision, from the Canyon County Sheriff, from the superintendent of the area's school district, and from a supervisor of the Canyon County Highway District. Following this hearing, the board concluded, upon the facts they had found, that the presence of Drake's proposed new subdivision would result in unreasonable interference with agricultural activities on the surrounding property. Drake's application was again denied.

On the basis of the findings of fact and conclusions of law entered as a result of this hearing, the board again moved in district court for summary judgment. The district judge granted summary judgment, affirming the board's decision denying Drake's request for rezoning. This appeal followed.

## I. DENIAL OF RELIEF BY DISTRICT COURT

■ Drake's first issue is stated as, "Did the court err in denying relief to the appellant upon appeal wherein the County Commissioners refused the appellant's application for a subdivision?" This statement of issue is really nothing more than a general invitation to search the record for error. It does not identify any findings of fact, statements of law, or application of law to facts, that are assertedly in error. Rule 35(a), I.A.R., requires that "[t]he brief of the appellant shall contain ... (3) ... [a] list of the issues presented on appeal, expressed in terms and circumstances of the case ... [which] shall fairly state the issues presented for review." This means that an appellant must identify specific issues to be presented on appeal and present supporting argument with citations to the authorities, statutes and parts of the transcript and record upon which he relies. *See, e.g., Cox v. Mountain Vistas, Inc.,* 102 Idaho 714, 719 (footnote 4), 639 P.2d 12, 17 (1981). Drake has not met these requirements in respect to his first issue.

## II. INTERLOCUTORY REMAND ORDERS

■ Drake's second contention is that the district court should not have allowed the county commissioners the option of either hearing the matter themselves on remand or of referring the matter to the zoning commission for hearing. Drake argues that input by way of recommendation from the zoning commission was required prior to final action by the board of county commissioners. The lack of this input, he asserts, deprived him of the opportunity to learn, in advance, the issues to be considered when the board opted to retain the matter rather than referring it to the zoning commission for further consideration.

The applicable zoning statutes (former I.C. §§ 31–3801 *et seq.,* now codified as I.C. §§ 67–6509 and 67–6511) required one public hearing before the local planning and zoning commission, and another public hearing before the "governing board" (in this case the board of county commissioners), as a condition to amendment of a local zoning plan. Likewise, the Canyon County zoning ordinance required a public hearing before the Canyon County zoning commission and another public hearing before the board of county commissioners, as a condition to amendment of the ordinance. The requisite hearings, both under the statutes and under the ordinance, had occurred, in fact, in this case prior to the interlocutory, optional remand order of the district court.

The primary issue throughout the entire process was whether the Canyon County zoning ordinance should be amended by rezoning Drake's property from agricultural to residential. When the proceeding was optionally remanded to the board of county commissioners, the district court specifically

directed the board (or the zoning commission) to consider "any material changes that may have occurred since the initial rejection" of Drake's application. The transcript of the board's hearing shows that the board understood the order of the court, and chose to retain the matter, rather than referring it to the zoning commission. At the outset of the hearing, Drake's counsel suggested that the procedure ordered by the court would limit the board to consideration only of those factors upon which the zoning commission had based its recommendation.

The district court held that the board acted correctly in ignoring Drake's suggested limitations and in hearing and considering all the evidence which Drake and other interested parties offered. The court held there was no statute limiting the board's review of the zoning commission's recommendation in the manner suggested by Drake. The court noted:

> Ultimate responsibility for zoning, and for zoning changes, is placed with the Board as a fact-finding agency. Moreover, the transcript shows clearly that Drake and his counsel were not misled by the procedure selected by the Board, no objection was made to proceeding as a Board of Adjustment, and Drake presented evidence beyond that which was offered at the first hearing before the Planning and Zoning Commission.

The record is clear that Drake was not deprived of an opportunity to meet the issue before the board, i.e., whether the rezone request should be granted or denied. The record shows Drake was aware that the board was not limited to factors considered by the zoning commission in making its recommendation on the issue. It shows that Drake was afforded the opportunity to present evidence concerning any factors or reasons bearing on resolution of the issue. And the record shows that he, in fact, did present such evidence. We hold that the optional remand order of the district court was not error.

## III. VALIDITY OF THE ORDINANCE

Drake next asserts that the district court erred in ruling that the Canyon County zoning ordinance was valid and was not unconstitutional as applied to his rezone application. We will discuss first his argument concerning the validity of the ordinance, and then his contentions which relate to constitutional issues.

### A. Comprehensive Plan

Drake first challenged the validity of the ordinance upon the ground that the ordinance was not accompanied by any separate comprehensive plan document. Such a separate comprehensive plan is now required by the Local Planning Act, I.C. §§ 67–6501 *et seq.*, enacted in 1975. The ordinance here in question was adopted in 1965, and Drake's application was filed in 1974.

In *Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 567 P.2d 1257 (1977), our Supreme Court addressed the validity of a zoning ordinance which, as here, was adopted in the absence of an enabling statute expressly requiring a comprehensive plan as a condition precedent to the ordinance. Upholding the validity of such an ordinance, the court said:

> [T]he general rule has become firmly established that, absent specific requirements in the enabling legislation, "the comprehensive plan need not have a separate physical existence apart from the zoning ordinances, and it need not be in writing, but its design may be found in the scheme apparent in the zoning regulations themselves." 8 McQuillin, Municipal Corporations, § 25.78, p. 201 (3d ed. 1976).

98 Idaho at 510, 567 P.2d at 1261.

Drake recognizes that, under *Dawson,* a separate comprehensive plan was not a requisite to the validity of the Canyon County ordinance when the ordinance was adopted. However, he disputes the district court's finding that the ordinance itself sets forth the scheme of a comprehensive plan, sufficiently to comport with *Dawson.* The district court's findings in this regard are as follows:

(1) Prior to enactment of the ordinance, residents requested zoning of the unincorporated areas of the county "in order to preserve the value of their properties", realizing that "minimum standards for new development are essential if many desirable features of the present County are to be preserved", and that such standards are necessary to property owners "who wish to insure their own investments by having some knowledge of future development trends." (Section 1.11)

(2) In response to these requests by concerned residents, and to a recognized need for zoning, the Board appointed the Canyon County Zoning Commission, prior to enactment of the ordinance, as "an advisory board" to "assist with the zoning of various areas which are in the path of population expansion", to "aid in the preparation of plans and standards for future growth", and to "work with property owners in areas where an interest has been expressed for changing the zones." (Section 1.12. This section makes it clear that the Board created the Commission as a planning group, and that on the basis of its planning the Commission would assist the Board in developing an ordinance, i.e., regulations, which would assure accomplishment of the four stated purposes of zoning in the county: to protect the character of a district, to insure open air and light for streets and roads and windows, to reduce congestion, and to promote orderly and economic County growth. Section 1.1. Prior planning would, obviously, be essential to success in achieving such goals.)

(3) Prior planning and careful analysis of land uses, keeping in mind both the best use of land as well as the interests of the residents of the zone and the whole county, had been performed prior to enactment of the ordinance. (Section 1.36)

(4) Zoning maps were prepared with then present land use as well as "anticipated future need for various type of land classifications" in mind. (Section 1.37)

(5) The analysis and review of land uses had led to establishment of seven zones, and permitted uses for each zone were "carefully reviewed" before adoption. (Section 1.32 and 1.33)

(6) Future alteration of the established zones could be accomplished "with the permission of the County Commissioners and County Zoning Commission." (Section 1.35. This section makes it apparent that the planning process provided by the Board would be an on-going process.)

(7) A specific definition of each zone established, and extensive definition of the uses which will be permitted in each zone, are provided "In order to carry out the provisions" of the ordinance. (Sections 3.0 and 9.0)

The Court finds that this is an ordinance which adopts a comprehensive plan by implementing, through definition of classifications of lands and extensive definition of permitted uses within those classifications, the planning process conducted prior to passage. Accordingly, the Court finds that the zoning regulations contained in the ordinance were "made in accordance with a comprehensive plan" as required by the relevant enabling legislation.

Our review of the ordinance leads us to the conclusion that the district court was correct. The scheme of the ordinance contains the "design" of a comprehensive plan and falls within the ruling of our Supreme Court in *Dawson*.

### B. Constitutionality of the Ordinance.

■ Drake next contended the ordinance was unconstitutionally vague, indefinite, and uncertain in that it provided insufficient standards to guide zoning decisions. The district court addressed Drake's argument from two perspectives.

First, the court found that the ordinance was sufficiently clear to "guide landowners in the use of their land ... in terms which are not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." This determination comports with the standard set forth by our Supreme Court in addressing a county zoning ordinance in *Wyckoff v.*

*Board of County Commissioners of Ada County,* 101 Idaho 12, 15, 607 P.2d 1066, 1069 (1980) (citing *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)). Second, the court found that the ordinance contained both sufficiently clear standards to guide the governing board in considering zoning requests, and sufficient procedures to guard against the exercise of uncontrolled discretion by the board. In this regard, the district court applied a principle found in *State v. Clark,* 88 Idaho 365, 371, 399 P.2d 955, 958 (1965), which, like the present case, was also concerned with the validity of a county zoning ordinance.

Drake argues that the ordinance lacks any criteria or standard to be used to change zoning from one area to another. Particularly he asserts there are no criteria for determining a change from agricultural zoning to residential. We disagree.

The ordinance establishes seven zones, and states in detail the permitted uses for each of these zones. The ordinance specifically predicates zoning in Canyon County upon the promotion of the public health, safety and welfare. Further, the ordinance was adopted pursuant to I.C. § 31–3801 (repealed and superceded by the Local Planning Act enacted in 1975; *see* 1975 Idaho Sess. Laws, ch. 188 § 1, p. 516). I.C. § 31–3801 provided:

> For the purpose of promoting the health, safety, morals and general welfare, to provide for orderly development of land and to protect property values, the board of county commissioners as hereinafter defined, is hereby authorized and empowered to exercise for counties all the powers, pursuant to the provisions and subject to the restrictions, granted by sections 50–401 through 50–409 Idaho Code, to city legislative bodies of municipalities.

The sections 50–401 through 50–409, referred to above in former I.C. § 31–3801, were later recodified as I.C. §§ 50–1201 through 50–1210, and ultimately were also repealed by the enactment of the Local Planning Act in 1975. *See* 1975 Idaho Sess. Laws, ch. 188, § 1, p. 516. However, at the time the Canyon Zoning Ordinance was adopted, I.C. § 50–1203 provided that all zoning regulations:

> shall be made in accordance with a comprehensive plan, and shall be designed to lessen congestion in the streets, to safeguard from fire, panic and other damages, to promote public health, safety, morals and the general welfare, to provide adequate light and air, to prevent overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city.

With these purposes and guidelines applicable, section 25.61 of the ordinance recites:

> When, in its judgment, the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, or when there are practical difficulties or unnecessary hardships in carrying out the strict letter of this Ordinance, the Board of Adjustment may, in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and very [sic] the application of the regulations herein established in harmony with their general purpose and intent.

The ordinance also provides for notice both of the procedure required for requesting a zoning change and of the criteria that will be evaluated in considering such a request. Section 27.0 of the ordinance establishes the procedure necessary to secure a zoning change. It is commenced by the filing of a written petition by the party desiring a change in the zoning ordinance. Next follows a study of the proposal, by the planning and zoning commission, and a public hearing before that body. The commission then submits a report and recommen-

dation to the Board of County Commissioners. Finally, another public hearing on the proposed amendment is held before the county commissioners. Advance notice of the two public hearings, by publication in a local newspaper, is required.

In our view the ordinance, with its stated purposes and uses permitted in the various zones—when taken in conjunction with the applicable statutes—provides sufficient criteria and proper procedure for determining zone changes. We hold that the ordinance is not vague, indefinite, or uncertain as Drake contends.

### C. Constitutionality of Commissioners' Actions.

Next Drake argues that the County Commissioners denied him substantive due process by acting unreasonably, arbitrarily and capriciously in denying his application under the zoning ordinance. In district court, Drake had attacked the denial in two respects. First, he had contended that his land was better suited for development as a residential subdivision than as agricultural property. Second, he argued that there was no difference between his present application for rezoning and his prior application which had been granted and which led to the first Drake subdivision.

█ The district court reviewed the evidence submitted to the Canyon County Commissioners. In respect to Drake's first contention, the judge found that there was no evidence that the property could not be put, economically, to any of the permitted agricultural uses allowed by the Canyon County zoning ordinance. The court considered the case in light of the language in Dawson, supra, that "a property owner has no vested interest in the highest and best use of his land, in the solely monetary sense of that term." 98 Idaho at 519, 567 P.2d at 1270. The district judge also applied the rule from Ford Leasing Development Co. v. Board of County Commissioners, 186 Colo. 418, 528 P.2d 237 (1974), which had been followed by our Supreme Court in Dawson. In Ford the Colorado Supreme Court held that deprivation from the highest and best

use of a particular piece of property, by virtue of denial of a rezone request, did not—in and of itself—render the rezone denial "arbitrary." The Colorado Court observed that such a denial would not be arbitrary unless the denial made it "not possible to use and develop the property for any other use enumerated in the existing zoning." (Emphasis in original) 528 P.2d at 241. Here, because Drake had not offered any evidence to show that his property could not profitably be used for any of the permitted agricultural uses enumerated in the Canyon County zoning ordinance, the district court concluded that Drake had not been deprived of the reasonable use of his property. In light of Ford and Dawson, we uphold the district court's determination.

█ Next, as to Drake's argument that the county commissioners were arbitrary in denying this rezone application—after granting the earlier one for the first subdivision—the district court found there were readily distinguishable factors relating to the two applications. The court noted there was no evidence that the first subdivision had changed the character of the surrounding area. Instead, the court found, from the evidence, that the first subdivision had maintained the agricultural characteristics of the area, whereas the second subdivision would not maintain the characteristics of the surrounding area.

The evidence showed that the first subdivision consisted of forty lots, with lot sizes of one acre each. The second, proposed subdivision would consist of 133 lot units within a total area of eighty acres. In other words, while the new subdivision would be twice the size, in acres, of the first subdivision, the second subdivision would allow more than three times as many single family residences as the first subdivision. Comparing the two subdivisions, the district court found that the second one would "substantially increase the population of the area, and the resulting impact of that population on the surrounding area."

In this regard, the district court observed that it was also proper for the county com-

missioners to consider "such matters as school crowding, traffic, police services, and dog and stray animal problems" in deciding whether the application for rezoning should be granted. *See, generally,* R. ANDERSON, AMERICAN LAW OF ZONING, §§ 7.01 through 7.33, pp. 533–613 (2d ed. 1976). Under these circumstances, the court held that the prior decision of the county commissioners to grant an application for rezoning, which led to development of the first subdivision, did not support Drake's argument that all future applications must be granted. The court concluded, therefore, that the denial of the application in issue was not arbitrary, capricious or unreasonable. The decision of the district court, as well as the determination made by the county commissioners, is supported by substantial evidence and will not be disturbed on appeal. *Gordon Paving Co. v. Blaine County Board of County Commissioners,* 98 Idaho 730, 572 P.2d 164 (1977).

## IV. RECORD AUGMENTATION

 Finally, Drake argues he should have been allowed to augment the record before the district court with minutes of previous planning and zoning commission meetings. However, Drake failed to follow the procedure provided by I.C. § 67–5215(e) for augmenting the record. This section is a part of the statute relating to judicial review of contested administrative proceedings, under which the district court conducted its review in the instant case. It controls the introduction of additional evidence in such matters. It requires an application to the reviewing court, together with a showing of materiality of the evidence and of good reasons for failure to present the evidence to the agency in the proceeding being reviewed.

Under I.C. § 67–5215(e), if the court is satisfied the foregoing conditions have been met, the court may order that the additional evidence be taken before the agency. Here, Drake made no application to the court to present additional evidence and did not show why the evidence was not presented at the hearing before the county com-

missioners. The failure to allow the additional evidence to be included in the record is therefore not error.

## V. ATTORNEY FEES ON APPEAL

Both parties have requested an award of attorney fees on this appeal. Because Drake has not prevailed on this appeal, his request for fees is denied. Further, this appeal involved a genuine issue of law concerning the validity of the Canyon County Zoning Ordinance. We are not persuaded that the appeal was brought or pursued frivolously, unreasonably, or without foundation. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). We therefore also deny the request by respondents for attorney fees.

The judgment of the district court is affirmed. Costs to respondents.

SWANSTROM and BURNETT, JJ., concur.