880 P.2d 771

STATE of Idaho, Plaintiff–Respondent,

v.

Jehn C. WOOD, Defendant–Appellant.

No. 20640.

Court of Appeals of Idaho.

Aug. 29, 1994.

Siebe Law Office, Moscow, for appellant. James E. Siebe, argued.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth, argued.

LANSING, Judge.

Jehn C. Wood appeals from his conviction for felony injury to a child, I.C. § 18–1501(1). He contends that the district court erred in admitting testimony regarding a prior inci-

dent where Wood allegedly choked or pushed the child's mother. Because we conclude that testimony should not have been admitted on this subject, we vacate the judgment of conviction and remand this case for a new trial.

Two-year-old Tasha Almandinger was pronounced dead on November 17, 1990. The preceding day Tasha's mother, Pamela Almandinger, had left Tasha alone with Almandinger's live-in-boyfriend, Wood,[1] while she made a brief trip to a grocery store. Almandinger testified that she left her house in Fernwood, Idaho, at 5:25 p.m. and met Wood part way in her return trip about five minutes later. Wood intercepted Pamela and exited his vehicle carrying Tasha in his arms. Tasha was unconscious and not breathing. Almandinger rushed the child to a nearby fire-station, from which the child was transported by ambulance to a hospital in St. Maries. Emergency medical technicians aboard the ambulance were able to partially restore Tasha's breathing after administering back blows en route to the hospital. At the hospital, doctors suspected that Tasha's airway was obstructed. When the physicians applied suction to her airway, partially eaten grapes were removed from Tasha's mouth and esophagus, and her airway was improved. Tasha was eventually transferred to a hospital in Spokane, Washington, and diagnosed as suffering severe brain damage due to asphyxiation, and a subdural brain hematoma. An examining physician suspected that Tasha was suffering from shaken baby syndrome, and the police were informed of this suspicion. However, a later radiological examination of Tasha revealed no evidence of shaken baby syndrome or other injuries consistent with child abuse. Tasha was eventually pronounced dead, and life support systems were removed. An autopsy revealed that the cause of death was a blunt impact trauma to the brain.

Wood was charged with second degree murder, I.C. §§ 18–4001, 18–4003(g). The complaint alleged that he had killed Tasha by inflicting a blunt impact injury. It was the State's theory that the blunt impact caused bleeding and swelling of the brain, which in turn led to respiratory arrest. Because there were no eyewitnesses to the alleged injury, the State's evidence against Wood consisted primarily of evidence that until the time Tasha was left alone with Wood she appeared to be in good health; testimony that Wood was the last person who had contact with Tasha; and the testimony challenged here: that Wood had been physically abusive of Almandinger on one occasion.

Wood denied injuring the child. At trial the defense presented medical evidence that the extent of brain swelling which would cause respiratory arrest could not have occurred in the short period that Wood was alone with the child. Wood thereby attempted to refute the State's theory that the injury must have been inflicted while Tasha was alone with him.

Wood testified at trial that he arrived home from hunting on the day in question at approximately 5:25 p.m. and that Almandinger left for the store upon his arrival. Wood explained that he went into another room to answer a telephone call, and when last he saw Tasha she was walking away from the door, crying over her mother's departure. When Wood returned to the room, he stated, Tasha was lying unconscious. After unsuccessfully attempting to revive her, Wood picked Tasha up, placed her in his vehicle and began driving toward the store where Almandinger had gone. He intercepted Almandinger en route as described above.

Medical evidence at trial established that Tasha's death was due to a blunt instrument trauma to the head caused either by a blow or by being thrown against something. Testimony also indicated, however, that the amount of swelling necessary to cause respiratory arrest from such a blunt impact trauma would take at least fifteen minutes, and up to several hours, to occur. There was also uncontradicted medical testimony that respiratory arrest caused by such an injury could not be corrected absent surgical intervention. The defense contrasted this evidence with Wood's and Almandinger's uncontradicted testimony that Wood was alone with Tasha for no more than five minutes

---

1. Subsequent to Tasha's death, Almandinger   married Wood.

and testimony that the emergency medical technicians had partially restored Tasha's breathing on the way to the hospital and that breathing was improved further at the St. Maries hospital. The State attempted to attack this defense by showing that Almandinger, who by the time of trial was married to Wood and had given birth to another child fathered by him, was slanting her approximation of the time Wood was alone with Tasha in order to make Wood appear innocent.

At the conclusion of the trial the jury was instructed on the elements of the charged offense, second degree murder, and the lesser included offenses of voluntary manslaughter, I.C. § 18–4006, and felony injury to a child, I.C. § 18–1501. The jury acquitted Wood of murder and manslaughter, but found him guilty of felony injury to a child.

Prior to trial Wood had filed a motion to exclude any evidence that he had a propensity to commit violent acts. In response, the State filed its own pretrial motion seeking a determination that the court would admit "evidence showing that the defendant is a violent individual having abused Pamela (Almandinger) Wood and other women." Specifically, the State sought to question Almandinger regarding an incident where Wood had allegedly choked her. The State knew that Almandinger would deny she had been choked by Wood, for she had already denied it during her testimony at the preliminary hearing. Nonetheless, the State sought to present her testimony about the incident at trial. The State also asked authorization to present the testimony of Wilma Banderob, a co-worker of Almandinger's, indicating that Almandinger had told Banderob of being choked by Wood. The district court denied Wood's motion, ruling that the State would be permitted to introduce evidence that "tends to prove defendant's quick temper, violent temper, or propensity to physical vio-

lence if such exists, provided the same is not too remote in time, etc." Just before trial, the court clarified its ruling by elaborating that if Almandinger denied telling co-workers that she had been choked, the State could impeach her with her prior statements to co-workers.

Almandinger was called as a witness by the State. On direct examination she acknowledged that Wood sometimes had a temper, but denied that Wood had ever choked her or that she had told co-workers that Wood had once choked her. The State then called Wilma Banderob who testified that she had seen bruises or marks on Almandinger's throat and that Almandinger had told her she had been choked by Wood.

On appeal the defendant argues that the State should not have been permitted to·elicit this testimony from Almandinger and Banderob because it was evidence of prior bad acts of the defendant offered to show a propensity to be violent and was, therefore, inadmissible under I.R.E. 404.[2] He also contends that Banderob's testimony was hearsay.[3]

## I. ALMANDINGER'S TESTIMONY

As a threshold matter, we address the State's assertion that Wood did not preserve his challenge to Almandinger's testimony for appeal because he did not object to this testimony at trial. The State's argument is not well-taken. Wood did attempt to exclude this testimony through his motion in limine, which was denied. A reiteration of his objection to this testimony at trial was not necessary in order to preserve the issue for appeal. *Davidson v. Beco Corp.*, 114 Idaho 107, 108 n. 1, 753 P.2d 1253, 1254 n. 1 (1987) *citing Davidson v. Beco Corp.*, 112 Idaho 560, 563–64, 733 P.2d 781, 784–85 (Ct. App.1986); *Cf. State v. Hester*, 114 Idaho

2. The State and the dissent take the position that Wood has not challenged on appeal the admission of Almandinger's testimony but has rather assigned as error only the admission of Banderob's testimony. While Wood's brief is not a model of clarity in that regard, we believe he has adequately challenged the State's entire tactic of eliciting Almandinger's testimony denying the choking in order to set the stage for Banderob's "impeachment" testimony.

3. To the extent that Wood also seeks by this appeal to challenge the admission of testimony that Wood did not like the child, we conclude that Wood failed to preserve this issue for appeal. Wood did not object to that testimony at trial, nor did Wood's motion in limine address that testimony.

688, 699, 760 P.2d 27, 38 (1988) (if trial judge reserves ruling on motion until point in trial where evidence is offered, objection must be made at that time). As we pointed out in *Davidson v. Beco Corp.*, 112 Idaho at 564, 733 P.2d at 785, a trial lawyer may have tactical reasons to avoid asserting in front of the jury an evidentiary objection that has already been overruled by a pretrial order.

■ Accordingly, we will consider Wood's argument that a portion of Almandinger's testimony should have been excluded. The following questions and answers are at issue:

[BY THE PROSECUTOR]: Is it true that the Defendant has a temper?

A: Sometimes.

Q: Do you recall being choked by the Defendant prior to Tasha's death?

A: He didn't choke me, we had a pushing match.

Q: Did that pushing match result in bruises to your throat?

A: Red marks.

. . . .

Q: Do you recall telling your co-workers that the Defendant had choked you?

A: No, I said he pushed me. I pushed him and he pushed me, and to calm me down pushed me up against the back of the wall.

Q: With his hands on your throat?

A: Yes.

Q: And he did that to calm you down?

A: Well, yeah, because we were arguing with each other.

The admissibility of this testimony turns upon I.R.E. 404, which provides that evidence of a trait of character and evidence of other crimes or wrongs is not admissible to prove that the individual acted in conformity therewith.[4]

■ In considering whether evidence is inadmissible under I.R.E. 404, the court must first determine whether the evidence is relevant to some material issue other than the character or propensity of the defendant. *State v. Buzzard*, 110 Idaho 800, 802, 718 P.2d 1238, 1240 (Ct.App.1986); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979). On appeal, we exercise free review of this determination because relevancy is a question of law. *State v. Raudebaugh*, 124 Idaho 758, 766, 864 P.2d 596, 604 (1993); *Lubcke v. Boise City/Ada County Housing Authority*, 124 Idaho 450, 456, 860 P.2d 653, 669 (1993). If a permissible purpose for the evidence is found, the court must then exercise its discretion in weighing the probative value of the evidence against any unfair prejudicial impact, pursuant to I.R.E. 403, to determine whether the evidence should be admitted. *Buzzard*, 110 Idaho at 802, 718 P.2d at 1240. We review that determination for an abuse of discretion. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *State v. Medrano*, 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App.1992).

The policy expressed in Rule 404, precluding use of character evidence or other misconduct evidence to suggest that the defendant must have acted consistently with those past acts or traits, is a long-standing element of American law. It is part of our jurisprudential tradition that an accused may be convicted based only upon proof that he committed the crime with which he is charged—not based upon poor character or uncharged sins of the past. The rule against use of other misconduct evidence to suggest that the defendant had a propensity to commit crimes of the type charged recognizes that such evidence may have a too-powerful influence on the jurors, and may lead them to

---

4. Rule 404 provides in pertinent part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

determine guilt based upon either a surmise that if the defendant did it before, he must have done it this time, or a belief that it matters little whether the defendant committed the charged crime because he deserves to be punished in any event for other transgressions. *See, e.g., Michelson v. U.S.*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948) ("The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."); *U.S. v. Avarello*, 592 F.2d 1339, 1346 (5th Cir.1979) ("The danger inherent in evidence of prior convictions is that juries may convict a defendant because he is a 'bad man' rather than because evidence of a crime of which he is charged has proved him guilty."); *State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978) ("The prejudicial effect of such testimony is that it induces the jury to believe the accused is more likely to have committed the crime on trial because he is a man of criminal character. It, therefore, takes the jury away from their primary consideration of the guilt or innocence of the particular crime on trial.").[5] The United States Court of Appeals for the District of Columbia Circuit has observed that:

> The exclusion of other crimes evidence is not simply a "technicality" designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence.

*United States v. Daniels*, 770 F.2d 1111, 1118 (D.C.Cir.1985).

While evidence of other crimes or wrongs is not admissible to prove propensity to commit the crime charged, it may be admitted when relevant for other purposes, including proof of knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. I.R.E. 404(b); *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Guinn*, 114 Idaho 30, 34, 752 P.2d 632, 636 (Ct.App.1988).

In the case before us, the State's purpose in offering Almandinger's testimony about the defendant's temper and questioning Almandinger about the choking incident is clear from the record. The prosecutor openly acknowledged that the purpose was to show Wood's propensity for violence. In argument on the motions in limine, the prosecutor stated:

> [T]his, your honor, I think would be the thrust of that propensity evidence to [show] that the defendant is in fact an individual that is quite violent and very prone to very sudden outbursts of violence.

> . . . .

> The thing is, your honor, that the critical—it's critical—now, once a person is violent they [sic] always are violent. They don't change, the old thing of a leopard doesn't change his spots. And the people [that] are prone to violence stay prone to violence.

The prosecutor did also make an effort to fit the evidence within some of the permissible purposes referenced in I.R.E. 404(b), but these rationales are unpersuasive. First, the prosecutor suggested that this evidence would be relevant to show Wood's "motive in shutting the child up." Clearly, neither a bad temper nor a prior incident of violence against the child's mother logically suggests

---

**5.** The accuracy of this perception that juries will be heavily influenced by propensity evidence has been born out by a number of studies. A study of over 3,500 jury trials by researchers at the University of Chicago showed that juries acquitted in forty-two percent of the cases where the jury was informed that the accused had no prior convictions but acquitted in only twenty-five percent of the cases where the jury was not given that information. HARRY KALVEN, JR. & HANS ZEISEL, THE AMERICAN JURY, 159–61 (1966). Moreover, in a group of cases where the prosecution's evidence was weakest, the defendant was acquitted in sixty-five percent of the cases where the jury was told there were no prior convictions, but acquittals resulted in only thirty-eight percent of the cases where the jury was not so informed. *Id.* For general discussions of other studies yielding similar conclusions *see* ROBERT D. OKUN, CHARACTER AND CREDIBILITY: PROPOSAL TO REALIGN FEDERAL RULES OF EVIDENCE 608 and 609, 37 Vill.L.Rev. 534, 551 (1992); JAMES E. BEAVER and STEVEN L. MARQUES, A PROPOSAL TO MODIFY THE RULE ON CRIMINAL CONVICTION IMPEACHMENT, 58 Temple L.Q. 585, 604–606 (1985).

any motive to harm the child. While an explosive temper could be a cause of a violent act, it does not constitute a motive.

■ Second, the prosecutor argued that the testimony was relevant to the question of Wood's identity as the perpetrator of the crime: "[T]his is a matter of identity, who is—if he is prone to violence in other places, sudden fits of violence, almost uncontrollable, why not in this particular case. I think it's a matter of identity." While identity is one of the purposes for which other misconduct evidence is permitted under Rule 404(b),[6] it cannot be used in the manner urged by the prosecutor. The prosecutor's rationale—that because Wood allegedly had a propensity to violence, he must have acted in accordance with that propensity in this case—is precisely the course of logic condemned and the type of propensity evidence prohibited by I.R.E. 404.

Finally, the prosecutor argued that the proffered testimony would show intent. Evidence of uncharged acts may be used to prove the *mens rea* element of a crime. I.R.E. 404(b); *State v. Matthews*, 124 Idaho 806, 810, 864 P.2d 644, 648 (Ct.App.1993). However, the logical relevance of such evidence generally is dependent upon proof that the charged and uncharged acts were similar, that the acts involved the same or similar victims, and that the uncharged act involved the same state of mind that constitutes the *mens rea* element of the charged crime. EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 5:07 to 5:10 (1991). *See also State v. Roach*, 109 Idaho 973, 975, 712 P.2d 674, 676 (Ct.App.1985). Such similarities are lacking here. Almandinger's description of the uncharged act was not that Wood delivered an unprovoked blow but that he pushed her against the wall with his hands on her throat during the course of an argument and mutual

shoving match; the alleged victim in the uncharged act was an adult woman, not a child; and the intent indicated in the elicited testimony about the uncharged act was an intent to "calm down" the person shoved, not the *mens rea* element required for the charged crime of second-degree murder or the lesser included offenses of voluntary manslaughter and felony injury to child. There is insufficient similarity between the occurrence described by Almandinger and the injury to Tasha to provide logical relevance on the issue of intent.

In summary, none of the rationales proposed by the State when the evidence was proffered showed a permissible purpose for this testimony. Therefore, the State should not have been permitted to question Almandinger about this incident.

In fairness, it must be noted that the district court conducted a careful analysis of the case law dealing with prior bad acts evidence. The court observed that this testimony appeared to be the type of propensity evidence prohibited by Rule 404, but concluded, based on *State v. Moore*, 120 Idaho 743, 819 P.2d 1143 (1991), that evidence of other misconduct is admissible to prove that the defendant was a quick-tempered or violent person and had a propensity to commit violent acts.

While we can appreciate the district court's efforts to reconcile and follow an array of authorities which may not appear entirely concordant, we do not believe that *Moore* authorizes admission of the evidence challenged here. In *Moore*, the defendant was tried for sexual abuse of a minor. A majority of our Supreme Court ruled that testimony from two other victims of childhood sexual abuse by the defendant was admissible under I.R.E. 404(b) because it showed a common plan or scheme by the defendant to sexually exploit young female children living within his household. The

---

6. For example, other crimes evidence may be used to show identity by demonstrating that the defendant's distinctive *modus operandi* in the other crime mirrors that in the charged crime and thereby earmarks the accused as the perpetrator. EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3:10. Evidence that the defendant committed other similar crimes also may prove that he had the

physical and mental capacity to commit the charged crime and is thereby probative of identity, and evidence of other misconduct showing consciousness of guilt, such as jury tampering, destruction of evidence, or flight from police to avoid arrest, may be admissible to identify the defendant as the perpetrator of the charged crime. IMWINKELRIED §§ 3:03, 3:04.

Court stated that this evidence was relevant to the issue of credibility and corroboration of the victim's testimony. The Supreme Court explained that because cases involving sexual abuse of children present special proof problems, evidence corroborating their testimony should be admitted:

Although corroboration is no longer mandatorily required in all sex crime cases, corroborating evidence may still be relevant, particularly in sex crime cases involving minor victims. Corroborative evidence in sex crime cases involving youthful victims is often times necessary to establishing the credibility of a young child. Too often the determination of the case rests strictly upon establishing that the victim's testimony is more credible than that of the alleged perpetrator. As was discussed in a UCLA law review article,

[A]dmission of corroborative evidence serves the dual purpose of reducing the probability that the prosecuting witness is lying, while at the same time increasing the probability that the defendant committed the crime.

*Other Sex Offenses,* 25 UCLA L.Rev. 261, 286 (1977).

*Moore,* 120 Idaho at 746, 819 P.2d at 1146 (citations omitted).

Hence, the court in *Moore* was especially concerned with the problems of proof in prosecution of sexual abuse and the fact that proof of the crime generally rests solely on the credibility of the young victim. In a subsequent decision which followed and further explained the principles stated in *Moore, State v. Tolman,* 121 Idaho 899, 828 P.2d 1304 (1992), the Supreme Court again emphasized the importance of such evidence to corroborate testimony from sexual abuse victims. The Court there referred to cases from a number of jurisdictions allowing evidence of other sex offenses where it is relevant to the credibility of the parties in a sex offense prosecution. *Id.* at 904 n. 5, 828 P.2d at 1309 n. 5. The *Tolman* court cautioned that its ruling allowing evidence of other uncharged incidents of sexual abuse should not be read too broadly: "We do not suggest today that any and all evidence of prior sexual misconduct is admissible in sex crime

cases merely by placing it under the rubric of corroborative evidence of a common scheme or plan." *Id.* at 905, 828 P.2d at 1310. Accordingly, we understand our Supreme Court's rulings in *Moore* and *Tolman* to be limited in their application to sexual abuse cases where other similar incidents of sexual misconduct by the defendant with the same or similar victims tends to corroborate a child victim's version of the charged incident.

We conclude, therefore, that those decisions do not provide a general rule for evaluating the admissibility of the challenged evidence in the present case. Here, the charge was not one of sexual abuse, nor was any of the State's witnesses a child. The evidence also suggests no plan or scheme to injure Tasha. Indeed, the State's theory that Wood struck the child in a sudden fit of temper is inconsistent with any argument that the crime was the culmination of a plan somehow evidenced by an earlier assault on Almandinger. Because the only logical relevance of this evidence was that suggested by the State's argument on the motions in limine that "a leopard does not change his spots" and "once a person is violent they always are violent," and because that is the very purpose for which use of other misconduct evidence is prohibited by Rule 404, the State should not have been allowed to question Almandinger about the alleged choking incident or about Wood's temper. Admission of this testimony was error.

## II. BANDEROB'S TESTIMONY

Following Almandinger's testimony, the State called Wilma Banderob, a former co-worker of Almandinger. Banderob testified that several months before Tasha's death, Banderob saw marks on Almandinger's neck, and Almandinger told Banderob that Wood had tried to choke her the night before. Wood sought to exclude this testimony on grounds that it was both hearsay, I.R.E. 802, and violative of I.R.E. 404.

For the same reasons discussed above regarding Almandinger's testimony about the incident, Banderob's testimony would be proscribed by I.R.E. 404 unless an independent basis for its relevance can be shown. The

State asserts such independent relevance exists. It argues that Banderob's testimony, which contradicted Almandinger's denial that she had been choked by Wood, was relevant for the permissible purpose of impeaching Almandinger pursuant to I.R.E. 613. In light of this purpose, the State avers that the testimony was not prohibited "propensity" evidence under Rule 404 and that it was not hearsay because it was not offered for the truth of the matter asserted (that Wood had choked Almandinger), but only for the purpose of undermining Almandinger's credibility.

Under I.R.E. 613, inconsistent out-of-court statements may be used to impeach a witness' trial testimony. Such statements are not excluded as hearsay because they are not offered for the truth of any of the facts asserted, but rather, solely to impeach the credibility of the witness. 28 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE & PROCEDURE § 6206 at 535 (1993) [hereinafter FEDERAL PRACTICE]; 1 KENNETH S. BROUN et al., McCORMICK ON EVIDENCE § 34 at 113 (John W. Strong, ed., 4th ed. 1992) [hereinafter McCORMICK ON EVIDENCE].

Wood points out that the State knew when it called Almandinger to the stand that she would deny having been choked by Wood and that it is therefore obvious that her testimony denying the alleged choking was elicited purely as a pretext to justify placing before the jury Banderob's testimony, which would otherwise have been inadmissible under I.R.E. 404 and 802. He relies upon numerous authorities holding that while the government may impeach its own witness, it may not knowingly call a witness and elicit adverse testimony purely as a guise to impeach the witness with otherwise inadmissible testimony and thereby place before the jury substantive evidence that is otherwise unavailable. *See, e.g., United States v. Gomez–Gallardo,* 915 F.2d 553 (9th Cir.1990); *United States v. Peterman,* 841 F.2d 1474, 1479–80 (10th Cir.1988); *United States v. Hogan,* 763 F.2d 697, 702 (5th Cir.1985); *United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984); *United States v. Miller,* 664 F.2d 94, 97 (5th Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1981); *United States v. Fay,* 668 F.2d 375, 379 (8th Cir. 1981); 1 McCORMICK ON EVIDENCE § 38 at 129.

The State responds that it did not call Almandinger purely to impeach her; it relied upon Almandinger's testimony to establish some elements of its case.[7] The State avers that although it wanted the jury to believe Almandinger on some points, it also had a legitimate reason to want to cause the jury to question Almandinger's veracity on other points where her testimony tended to favor the defense. Specifically, the defense relied upon Almandinger's estimate of the very short time span when Wood was alone with Tasha, coupled with medical testimony, to assert that the fatal injury could not have occurred in the five minutes when Wood was alone with Tasha. Therefore, the State urges, it had a principled basis to suggest that Almandinger slanted her testimony to the defendant's benefit, and the State attempted to do this by showing that Almandinger's trial testimony on the alleged choking incident was inconsistent with what she had told Banderob earlier.

We might be persuaded by the State's argument if Almandinger's testimony that was directly impeached by Banderob had itself been admissible, but we have held that it was not. The State should not have been permitted to elicit Almandinger's testimony about the alleged choking in the first instance. The State may not predicate the admissibility of Banderob's otherwise inadmissible testimony upon its value to impeach other evidence that was itself inadmissible and should have been excluded. To hold otherwise would allow the court, having once erred by admitting inadmissible testimony, to compound the error by admitting additional otherwise inadmissible testimony under the guise of impeachment. We do not believe that I.R.E. 613 countenances such boot-

---

**7.** The State presented Almandinger's testimony in order to establish that Wood had been alone with the child and that the child appeared to be in good health at the time Almandinger departed for the grocery store.

strapping of inadmissible evidence.[8] Since Banderob's testimony was not relevant as permissible impeachment, it should have been excluded pursuant to I.R.E. 404 and 802.

### III. HARMFULNESS OF ERROR

■ Having concluded that the challenged testimony should not have been admitted, we must determine whether the error was harmless. I.R.E. 103 provides that error in the admission or exclusion of evidence will not result in reversal unless it prejudices a substantial right of the defendant. An error in the admission of evidence may be deemed harmless if but only if it appears from the record that the error did not contribute to the verdict. *State v. Brazzell*, 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990). In the criminal context an evidentiary error requires that the conviction be vacated unless, "the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error." *Medrano*, 123 Idaho at 120, 844 P.2d at 1370; *Brazzell*.

We cannot conclude that the improper testimony about Wood's temper and the alleged choking of Almandinger was harmless. The evidence against Wood was wholly circumstantial. Apart from the propensity evidence which we have held to be inadmissible, the State's case rested primarily upon evidence that Wood was alone with Tasha at a time the injury might have occurred; that the cause of death was a blunt impact trauma which probably occurred when Tasha was hit very hard or was thrown against a solid object; and that Tasha was apparently in good health before being alone with Wood. There was also controverted evidence that Wood did not like the child. The medical testimony was equivocal. Expert witnesses for both the State and the defense testified

that it would take at least fifteen minutes and up to several hours for the type of injury inflicted upon Tasha to cause respiratory arrest. This time frame was significant because of testimony that Wood was alone with the child for only five minutes. Expert testimony also indicated that once respiratory arrest from such an injury occurred, it could be corrected only by surgical intervention, yet the testimony established that Tasha's breathing was partially restored en route to the hospital and was fully restored at the hospital when a grape was removed from her esophagus. A physician called by the defendant testified that, from a statistical standpoint, Tasha's death would not have been the normal result of the type of subdural hematoma she suffered. He said that the amount of swelling found in Tasha's brain, which contributed to her death, could not be attributed to the subdural hematoma alone, but that lack of oxygen to the brain could account for the extent of swelling. There was substantial testimony that the swelling in Tasha's brain could have been caused by a lack of oxygen from choking or other forms of asphyxiation. A neighbor also testified that on the day before the event in question she saw Tasha go limp on one side and fall to the floor unconscious. Collectively, this evidence created a question as to whether Tasha's initial respiratory arrest was caused by choking on a grape, or some other form of asphyxia, rather than by the head injury, and whether the head trauma, if it caused the brain swelling, must have occurred prior to Wood's arrival. Thus, the evidence did not unambiguously point to Wood's guilt.

This is not a case where the evidence against the defendant was overwhelming even without the improper evidence, or where the defendant's story was plainly untenable. We note also that the jurors were not entirely persuaded by the State's evidence, for they acquitted Wood of the more

8. This conclusion draws support, by analogy, from a widely-recognized limitation on impeachment that extrinsic evidence may not be used to impeach a witness regarding a collateral matter. *See* 27 FEDERAL PRACTICE, *supra*, § 6096 at 539–41. Under that restriction, the State could not impeach a witness about a matter that is logically irrelevant ("collateral") to the case in an effort to show the witness to be untruthful. If it is impermissible to impeach testimony on matters that are logically irrelevant, it should also be impermissible to impeach testimony that is inadmissible and therefore "legally irrelevant." *See* IMWINKELRIED, *supra*, §§ 8:01–8:02, where the author refers to evidence as "legally irrelevant" if, although logically relevant, it has been determined to be inadmissible under Rule of Evidence 404(b) or for other reasons.

serious charges of second-degree murder and manslaughter before finding him guilty of felony injury to a child. On this record we cannot conclude beyond a reasonable doubt that Wood would have been found guilty if the jury had not heard the inadmissible evidence of his alleged temper and physical abuse of Almandinger. This evidence may have led the jury to a guilty verdict based upon an impermissible inference that Wood had a propensity to violence, rather than upon the evidence as to his guilt or innocence of the crime charged.

## IV. CONCLUSION

The district court erred in permitting the State to elicit testimony from Almandinger and Banderob about Wood's temperament and alleged acts of violence toward Almandinger. We cannot conclude that this error was harmless beyond a reasonable doubt. Therefore, we vacate the judgment of conviction and remand this case for a new trial.

WALTERS, J., concurs.

PERRY, Judge, dissenting.

I respectfully dissent. I cannot agree with the result reached by my colleagues today for the simple reason that the case has been decided on an issue neither raised nor briefed on appeal. In order to reach the desired result in this case, the majority has had to raise the issue, make the arguments and provide adequate legal authority in support of those arguments. The majority cursorily remarks in a footnote that "we believe [Wood] has adequately challenged the State's entire tactic of eliciting Almandinger's testimony denying the choking in order to set the stage for Banderob's 'impeachment' testimony." The briefing and framing of issues on appeal, however, simply cannot support such a conclusion.

On appeal, Wood has only argued that the testimony of Wilma Banderob was erroneously admitted. Wood framed his issues on appeal as follows:

A. WOULD WILMA BANDEROB'S TESTIMONY HAVE BEEN ADMISSIBLE AS SUBSTANTIVE EVIDENCE?

B. DID THE STATE IMPEACH ITS OWN WITNESS FOR THE PRIMARY PURPOSE OF INTRODUCING OTHERWISE INADMISSIBLE HEARSAY TESTIMONY?

C. WAS DEFENDANT/APPELLANT PREJUDICED BY BANDEROB'S TESTIMONY CONCERNING THE ALLEGED PRIOR BAD ACT?

Under each of these headings, Wood has also included the following subheadings:

A. RULE 607 I.R.E. PROHIBITS THE STATE FROM IMPEACHING ITS OWN WITNESS AS A SUBTERFUGE TO INTRODUCE OTHERWISE INADMISSIBLE HEARSAY EVIDENCE.

B. WILMA BANDEROB'S TESTIMONY WAS NOT OTHERWISE ADMISSIBLE.

1. Wilma Banderob's Testimony Was Not Relevant Because It Did Not Pertain to a Contested Material Issue.

2. Banderob's Testimony Should Have Been Excluded Because It Had Marginal, if Any, Probative Value and It Was Unfairly Prejudicial to the Accused.

C. BANDEROB'S TESTIMONY DID NOT FIT THE PRESENT SENSE IMPRESSION EXCEPTION TO THE GENERAL PROHIBITION AGAINST HEARSAY EVIDENCE.

D. THE STATE IMPEACHED PAMELA [ALMANDINGER] AS A SUBTERFUGE TO INTRODUCE OTHERWISE INADMISSIBLE HEARSAY EVIDENCE.

E. APPELLANT WAS PREJUDICED BY THE ADMISSION OF WILMA BANDEROB'S TESTIMONY WHICH WAS IMPROPER PROPENSITY EVIDENCE.

This Court, as well as the Idaho Supreme Court, has long followed the proposition that "the failure of the appellant to include an issue in the statement of issues required by I.A.R. 35(a)(4) will eliminate the consideration of that issue in the appeal." *State v. Prestwich*, 116 Idaho 959, 961, 783 P.2d 298, 300 (1989). *See also Grand Canyon Dories, Inc. v. Idaho State Tax Com'n*, 121 Idaho 515, 826 P.2d 476 (1992); *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119

Idaho 87, 803 P.2d 993 (1991); *State v. Hoisington*, 104 Idaho 153, 657 P.2d 17 (1983); *Jensen v. Doherty*, 101 Idaho 910, 623 P.2d 1287 (1981); *Drake v. Craven*, 105 Idaho 734, 672 P.2d 1064 (Ct.App.1983).

Similarly, issues unsupported by legal argument or authority will not be considered on appeal. *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 796 P.2d 101 (1990); *Eliopulos v. Knox*, 123 Idaho 400, 848 P.2d 984 (Ct.App. 1992); *Berning v. Drumwright*, 122 Idaho 203, 832 P.2d 1138 (Ct.App.1992).

This case presents the unique situation where the issue has not been raised in the statement of issues as required by I.A.R. 35(a)(4) *nor* has it been argued in the brief itself. It is, of course, impractical to recite Wood's brief in this opinion. The "Summary of Argument," however, is a fair representation of the entirety of the argument contained in the brief:

The State acted in bad faith by introducing Banderob's testimony under the pretext of impeachment. The defense objected timely when the State laid foundation for "impeachment," and it also objected when Banderob took the stand. The defense argued that the State's motive in eliciting Pamela [Almandinger's] testimony regarding the "choking" incident was an improper impeachment and that Banderob's testimony was inadmissible hearsay, unfairly prejudicial, narrative, and improper impeachment used to present otherwise inadmissible hearsay.

Banderob's testimony was not admissible under Rules 613 and 607 because it was not relevant to a material issues. The court erred when it held that Banderob's testimony was admissible because it pertained to material proof of motive pursuant to Rule 404(b) I.R.E. and that it was otherwise admissible as a present sense impression.

Rule 404(b) I.R.E. was not applicable because motive was not a contested material issue, and because the testimony's lack of probative value was outweighed by unfair prejudice due to lack of similarity to the offense charged. Pamela [Almandinger's] discussion with Banderob testimony was too remote in time from the event

explained to constitute a present sense impression.

The State improperly impeached its own witness as a pretext to introduce otherwise inadmissible hearsay evidence that prejudiced the defense. The State had no need to impeach its own witness and, in fact, relied upon her credibility for its case in chief as far as proving that Tasha seemed "fine" that day, thus precluding an assertion of the possibility that she suffered a blow before she was left in Appellant's care. The testimony relative to the alleged choking incident was unrelated to Pamela [Almandinger's] other testimony. There was no need to raise the issue other than as a pretext to enter propensity evidence.

Banderob's testimony was extremely prejudicial propensity evidence and Appellant was denied a fair trial because it was improperly admitted. Therefore, the defense asks that the judgment be reversed and remanded for a new trial with instructions prohibiting the improper introduction of propensity evidence under the guise of impeachment.

The issue upon which the majority decides this case, which is never raised, would 'be framed, "The trial court erred by allowing Pamela Almandinger's testimony regarding the choking incident." It is true that Wood questions the tactic of impeaching one's own witness, but *never directly challenges* the underlying questioning of Pamela Almandinger. The only challenge is to the testimony of Banderob. Indeed, if Banderob had never testified, the entirety of Wood's argument on appeal would be rendered meaningless.

The state, in its respondent's brief, also did not address the issue of the admissibility of Pamela Almandinger's testimony. It wasn't until this Court, after hearing oral argument, ordered the state to further brief the issue that the state was afforded the opportunity to present argument regarding Pamela Almandinger's testimony. The state, in its supplemental brief, attacks the consideration of this issue because it has not been raised on appeal but then goes on to argue that even if properly raised, Pamela Almanding-

er's testimony was admissible under I.R.E. 404(b).

The difficulty I have with the majority opinion stems from what I believe to be a substitution of authority for argument. Had Wood properly challenged the testimony of Pamela Almandinger on appeal, that challenge would have been based primarily on I.R.E. 404. Wood does, in fact, discuss I.R.E. 404 in great detail and argues quite strenuously that it should have prohibited *Banderob's* testimony. Nowhere in Wood's brief do we find an argument that I.R.E. 404 prohibited the questioning of Pamela Almandinger surrounding Wood's prior alleged misconduct. The majority apparently feels justified in supplying an unraised argument because the legal authority to support such an argument, had it been made, is supplied in relation to an entirely separate issue.

If the issue had been properly raised, I may agree with the majority's analysis. Unfortunately, it appears that Wood, for whatever reason, has chosen not to make that argument.[9] However egregious a party's mistake, an appellate court should never abandon its role as a decisionmaker and take on that of an advocate. I believe such is the case by the majority here.

The majority notes, "We might be persuaded by the State's argument if Almandinger's testimony that was directly impeached by Banderob had itself been admissible, but we have held that it was not." Because I would conclude that Pamela Almandinger's testimony was never challenged on appeal, and therefore is not reviewable, I would accept the state's argument that no error was committed in this case. Thus, I would affirm the judgment of conviction.

---

9. It appears that counsel for Wood may have labored under the impression that the testimony of Pamela Almandinger was admissible. At trial, counsel stated, in arguing that impeachment testimony was an improper method to introduce propensity evidence stated:

> Again, it seems to go toward the propensity aspect, and again propensity is something that the prosecution is entitled to get into with Ms. [Almandinger], but it doesn't seem like they should be entitled to prove it by virtue of impeachment. That is the whole concern here.