69 P.3d 153

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Nazar Khaled ALSANEA, Defendant–Appellant.**

No. 27756.

Court of Appeals of Idaho.

Jan. 16, 2003.

Review Denied May 16, 2003.

734

736

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Alan G. Lance, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

PERRY, Judge.

Nazar Khaled Alsanea appeals from his judgments of conviction and sentences for two counts of aggravated assault on a law enforcement officer, use of a firearm during commission of a crime, violation of a no-contact order, and unlawful entry. Alsanea also appeals from an order of the district court denying his I.C.R. 35 motion to correct an illegal sentence. We affirm.

## I.

### FACTS AND PROCEDURE

Alsanea had lived with his girlfriend and their son for approximately three years when they separated in July 2000. The girlfriend

moved into her mother's home, and Alsanea moved into an apartment. The girlfriend initially allowed Alsanea to see their son as often as he pleased but, in August, she curtailed his visitation. In September, the girlfriend called the police twice and reported that Alsanea was stalking and harassing her. Alsanea confronted the girlfriend several times during the next two months. During one confrontation in November, Alsanea informed the girlfriend that he had purchased a gun and threatened to shoot her, her mother, their son, and himself. Alsanea was arrested on November 15 for stalking. Upon his release from jail, Alsanea continued to contact the girlfriend despite being served with a no-contact order. On November 22, an "aware alarm" was installed at the home of the girlfriend's mother so that the police could be contacted immediately if the girlfriend was being threatened by Alsanea or was in danger.

On the evening of December 6, Alsanea entered the girlfriend's mother's home through an unlocked back door. He handed the girlfriend two pictures of their son and stated that he no longer needed them. Additionally, Alsanea gave the girlfriend's mother some money that he owed her. Alsanea then asked to speak with the girlfriend outside. While the two were outside talking, the girlfriend's sister activated the aware alarm and called 911 to report Alsanea's presence at the home. Officers responded to the home and approached the front door with their weapons drawn. Alsanea was ordered to get on the ground but failed to comply. Rather, Alsanea pulled a gun from his waistband and pointed it at the officers. One of the officers fired his weapon, hitting Alsanea in the chest. Upon hearing the first officer's shot, a second officer began firing at Alsanea. Alsanea ultimately collapsed onto a bathroom floor after being shot approximately seven times.

Alsanea was charged with two counts of aggravated assault on a law enforcement officer, I.C. §§ 18–901(b), 18–905(a), 18–915; use of a firearm during the commission of a crime, I.C. § 19–2520; violation of a no-contact order, I.C. § 18–920; and unlawful entry, I.C. § 18–7034. A jury found him guilty of all charges after a trial.

For both counts of aggravated assault on a law enforcement officer, the district court sentenced Alsanea to consecutive, determinate terms of ten years. For violation of the no-contact order, Alsanea was sentenced to a consecutive, indeterminate term of one year. Alsanea was sentenced to a consecutive, indeterminate term of six months for unlawful entry. The district court also imposed an indeterminate fifteen-year term for use of a firearm during the commission of a crime and ordered that it run consecutive to Alsanea's sentence for the second aggravated assault charge. In the aggregate, Alsanea's sentences totaled thirty-six years and six months, with a minimum period of confinement of twenty years. Alsanea subsequently filed an I.C.R. 35 motion to correct an illegal sentence, which was denied. Alsanea appeals, contending that the district court erred by admitting prior bad acts evidence at trial, allowing his trial counsel to waive his right to an interpreter, and refusing to give a requested jury instruction. Alsanea also argues that his sentences are excessive and that the district court erred by denying his I.C.R. 35 motion to correct an illegal sentence.

## II.

## ANALYSIS

### A. Prior Bad Acts Evidence

Prior to trial, the state gave notice of its intent to use evidence that Alsanea had stalked his girlfriend and that he had previously threatened to kill her. At a hearing on the state's motion, there was a stipulation by the defense that a no-contact order was in effect at the time of the incident, that there had been prior contacts by Alsanea with the girlfriend requiring installation of the aware alarm, and that the aware alarm was in place at the time of the offenses. The district court determined that the officers' actual knowledge of Alsanea's propensity for violence, as demonstrated by the stalking and harassment of his girlfriend, was relevant to a key element of aggravated assault—whether the officers had a well-founded fear that

violence was imminent—and that, therefore, the evidence was admissible. The district court stated:

> Well, I think there's going to have to be some foundation offered through [the girlfriend] about what type of conduct it was that she complained of to the police, what she advised the police of.
>
> I think that should be the focus of this testimony, not in general was there stalking, but what did she tell the police about what she had been experiencing, because I think that's relevant, because the knowledge is relevant to the element of a well-founded fear, and so what she told them about it is relevant.
>
> The fact that there may have been other conduct that she experienced that she did not report, I don't think those issues we should get into, because this isn't a broader stalking trial. It is a trial on aggravated assault, and so what becomes important is what conduct did she report to the police, particularly to [the investigating officer] himself, so that it was in his mind at the time of the incident.

At trial, the girlfriend testified that: (1) in September 2000, Alsanea began stalking and harassing her and she reported this conduct to the investigating officer; (2) in October, Alsanea told her that if she did not let him see their son whenever he wanted, he was going to cause her to have a car accident; (3) on her way home from a court hearing regarding custody of their son, Alsanea forced her car off the road and threatened to kidnap their son if she did not let Alsanea see him; (4) later in October, while she was typing on a computer in her bedroom, Alsanea called and asked what she was doing on the computer and told her that he watched her all the time without her knowing it; (5) in November, Alsanea called her cell phone at least ten times in one day, which she reported to the investigating officer; (6) after leaving work one day, she saw Alsanea sitting in his car in the parking lot and he told her that he had purchased a gun; (7) as she was leaving her home for work one day, Alsanea called her on the phone and told her not to leave the house because if she did, he was going to shoot her, her mother, their son, and himself, which she reported to another officer; (8) Alsanea called her from the jail after he had been arrested for stalking and stated that he could not believe that she would have him arrested and implied that if she was scared then, she would be more scared when he was released from jail; and (9) after Alsanea was released from jail, he continued to contact her despite the no-contact order being issued.

One of the officers involved in the incident testified that: (1) in September 2000, he took two reports concerning Alsanea's stalking and harassment of the girlfriend; (2) he received a police intelligence bulletin prior to Alsanea's arrest indicating, in part, that Alsanea had purchased a gun and had threatened to kill the girlfriend, their son, and himself; (3) in late November, he discovered that Alsanea attempted to purchase a nine millimeter gun and that, when he confronted Alsanea about the purchase, Alsanea at first denied that he attempted to buy a gun but later stated that he tried to purchase a deer rifle for a friend; and (4) he knew that an aware alarm had been installed in the girlfriend's mother's home. The other officer testified that: (1) in September, he assisted the first officer with the girlfriend's harassment complaint against Alsanea; (2) he received an intelligence bulletin indicating that he needed to be aware of threats to and harassment of the girlfriend and her family by Alsanea; (3) he had received information that Alsanea attempted to purchase a gun and may be armed; and (4) he had knowledge that an aware alarm had been installed in the house of the girlfriend's mother.[1]

---

1. As conceded by the state and Alsanea, there was testimony presented at trial that fell outside the scope of the district court's pre-trial ruling on the admissibility of the prior bad acts evidence because it was not established that the officers involved in the aggravated assaults had personal knowledge of some of the acts testified to. Alsanea's trial counsel did not object to that testimony at trial. On this appeal, our examination of the admissibility of the prior bad acts evidence is confined to the evidence falling within the scope of the district court's ruling. We do not address the admissibility of the evidence that went beyond the scope of the ruling because it was not preserved for our review by an objection at trial. *See State v. Rozajewski,* 130 Idaho 644, 645, 945

On appeal, Alsanea claims that the admission of evidence concerning his prior bad acts was erroneous because there was not an independent basis for the relevance of the testimony, other than to prove his propensity to commit the aggravated assaults against the officers. Alsanea additionally asserts that, even if the testimony was relevant for some proper purpose, the prejudicial value of the testimony substantially outweighed its probative value because it portrayed Alsanea as a man predisposed to commit crimes of violence. Finally, Alsanea argues that the error in admitting the testimony was not harmless.

█ Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs,* 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler,* 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct.App.1987). However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila,* 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App.2002). In determining the admissibility of evidence of prior bad acts, this Court applies a two-prong analysis. First, the evidence must be relevant to a material, disputed issue concerning the crime charged. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Relevant evidence is defined as evidence which has any tendency to make the existence of a fact of consequence in an action more probable or less probable than the fact would be without the evidence. I.R.E. 401. Whether evidence is relevant is an issue of law and we, therefore, exercise free review of a trial court's relevancy determination. *State v. Atkinson,* 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). The second step in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* When reviewing this step we use an abuse of discretion standard. *Id.*

█ Here, the jury was instructed that in order to convict Alsanea of aggravated assault upon a law enforcement officer, the state had the burden of proving that: (1)

Alsanea committed an assault upon the person of another; (2) the person assaulted was a police officer and that Alsanea knew the person was a police officer; and (3) the assault was committed with a deadly weapon or instrument. "Assault" was defined as an unlawful attempt, with apparent ability, to commit a violent injury on the person of another or an intentional, unlawful threat by word or act to do violence to the person of another, with an apparent ability to do so, and the doing of some act which created a well-founded fear in the other person that such violence was imminent. Thus, whether the officers had a well-founded fear that violence was imminent was a material element to be proven by the state. According to the plain language of I.C. § 18–901(b), however, the requisite well-founded fear of an assault victim must arise from the doing of the act in question—here, aiming the gun at the officers—rather than from the defendant's previous bad acts of which the victim is aware. *Cf. State v. Boehner,* 114 Idaho 311, 314 n. 3, 756 P.2d 1075, 1078 n. 3 (Ct.App.1988) (The basis for an assault victim's well-founded fear must arise from an "act" rather than from an alleged statement made on a *prior* occasion.). Hence, we conclude that Alsanea's previous acts of stalking and threatening his girlfriend were not relevant to the officers' well-founded fear.

The state argues that the testimony concerning Alsanea's stalking of and threats to the girlfriend was also relevant to Alsanea's intent to commit the aggravated assaults. With respect to the "threat" type of assault proscribed by I.C. § 18–901(b), the state's burden was to prove beyond a reasonable doubt that Alsanea intended to make a threat and caused apprehension in the officers. *See State v. Dudley,* 137 Idaho 888, 891, 55 P.3d 881, 884 (Ct.App.2002). Evidence of other crimes, wrongs, or bad acts may be used to prove the mens rea element of a crime. I.R.E. 404(b); *State v. Wood,* 126 Idaho 241, 246, 880 P.2d 771, 776 (Ct.App.1994). The logical relevance of such evidence generally is dependent upon proof that the charged offense and the prior bad act were similar,

P.2d 1390, 1391 (Ct.App.1997). We also do not address the admissibility of the evidence encompassed by Alsanea's stipulation at the pre-trial hearing.

that the bad act involved the same or similar victims, and that it involved the same state of mind that constitutes the mens rea element of the charged offense. *Id.*

Here, Alsanea's prior bad acts of stalking and harassing his girlfriend were not similar to the aggravated assaults committed against the officers. The prior acts of which the officers were aware involved Alsanea calling the girlfriend's cell phone ten times in one day and Alsanea informing the girlfriend he had purchased a gun and verbally threatening to shoot her if she did not submit to his will concerning their son. The girlfriend did not testify that she observed the gun or that Alsanea pointed it at her. The aggravated assaults that Alsanea was charged involved him actually pulling a gun from the waistband of his pants and aiming it at two police officers. The victim of Alsanea's prior acts was his girlfriend, and perhaps certain members of her family, rather than a police officer. Finally, the mens rea required for stalking and harassment is to willfully and maliciously follow or harass another, whereas the intent element of aggravated assault is to intentionally threaten violence to and cause apprehension in another. Evidence that Alsanea told his girlfriend that he had purchased a gun, and that he intimidated her by verbally threatening to shoot and kill her, was not relevant to his intent to threaten the officers with violence. The similarities between Alsanea's prior acts of stalking and threatening his girlfriend and the aggravated assaults against the officers are lacking.

▪ Furthermore, even if Alsanea's prior bad acts and the charged offenses were sufficiently similar, this Court has held that where proof of the commission of the charged offense carries with it the evident implication of a criminal intent, evidence of the perpetration of other like offenses or bad acts will not be admitted. *See State v. Stoddard*, 105 Idaho 533, 537, 670 P.2d 1318, 1322 (Ct.App.1983). There was ample evidence adduced at trial from which Alsanea's criminal intent could be determined. One of the officers involved in the aggravated assaults testified that, when he confronted Alsanea and ordered him to get down on the ground, Alsanea looked directly at him with a strong, determined look, like he was an "obstacle" to Alsanea. Both of the officers involved testified that Alsanea swept his jacket back with his elbow—which one officer described as a very distinct, unfriendly gesture—and pulled out his gun. Several witnesses, including the officers, testified that Alsanea aimed his gun at the officers after pulling it out of his waistband. Evidence of Alsanea's act of pulling a gun from his waistband and aiming it at the officers obviously implied his intent to threaten the officers. Accordingly, because Alsanea's guilty intent could be established by proving that he pulled out his gun and pointed it at the officers, the testimony concerning Alsanea's prior bad acts was not necessary to prove his intent.

▪ In sum, we conclude that the testimony concerning Alsanea's prior bad acts was not relevant to the officers' well-founded fear of imminent violence or to Alsanea's intent in committing the aggravated assaults. We now examine whether the error in admitting such evidence was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct.App.1983). An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *State v. Boman*, 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct.App.1993).

▪ At trial, several witnesses testified that they observed Alsanea pull a gun from his waistband and aim it at the officers. Those witnesses further testified that they believed Alsanea fired his gun at the officers, although a defense witness refuted that testimony by stating that he conducted testing on Alsanea's gun and discovered that it had not been fired. Alsanea testified that he did not aim the gun at the officers but, rather, unsuccessfully attempted to pull his gun from his waistband to give it to them. The resolution of the conflict in the evidence rested upon whose story the jury found more credible. Based upon the verdicts, the jury apparently believed the state's version. There was substantial evidence, aside from the irrelevant prior bad acts evidence, supporting the jury's verdicts of guilt. We conclude beyond a reasonable doubt that the com-

plained-of testimony did not contribute to the jury's verdicts and that the error in admitting the testimony was, therefore, harmless.

## B. Right to an Interpreter

English is not Alsanea's native language. Prior to calling Alsanea to testify, defense counsel informed the district court that Alsanea wished to try the questions and answers in English and only have the interpreter available if needed. Without personally addressing Alsanea, the district court stated, "Right. But I would like the interpreter to be physically more available so Mr. Alsanea can ask a question if he needs to, so if we could get a chair for her up by the witness stand." Thereafter, Alsanea testified in English until the trial was recessed for the day. The next day, Alsanea resumed his testimony and the following exchange took place:

THE COURT: Go ahead, but why don't you keep your questions phrased in a simpler manner.

. . . .

PROSECUTOR: Now, yesterday you talked about seeing [the girlfriend] at Albertson's.

DEFENDANT: Yes.

PROSECUTOR: What Albertson's was that—

COUNSEL: Judge, I'm sorry. It doesn't look like the interpreter is here.

THE COURT: That's why I was asking counsel to keep it kind of simple. I don't know what the confusion is. I know Mr. Alsanea said he doesn't need one.

COUNSEL: Some terms he may not understand.

THE COURT: I think, especially in the legal world, people sometimes tend to use wording that everyone is not familiar with, so it can be helpful to have an interpreter. You know, I would feel more comfortable if we would wait a few minutes for her to arrive, so why don't we take a short break. She may have car trouble or something, so we will continue after that.

After a short recess, the interpreter arrived. Thereafter, the prosecutor asked Alsanea to read a document printed in English, which he was unable to do. The interpreter assisted Alsanea in reading the document and then translated Alsanea's response to the prosecutor's inquiry. That was the only instance in which the interpreter assisted Alsanea with his testimony. On appeal, Alsanea claims that the district court erred by permitting him to testify in English, without the aid of his interpreter, asserting that his right to an interpreter could only be waived by him personally on the record and not by his attorney.

Generally, whether to appoint an interpreter after the defendant has requested one is a decision resting within the trial court's discretion and will not be overturned unless the defendant shows that the discretion has been abused. *State v. Hernandez,* 120 Idaho 785, 788, 820 P.2d 380, 383 (Ct. App.1991). In this case, the issue is not whether the district court abused its discretion by failing to appoint an interpreter for Alsanea but, rather, whether the district court erred by allowing defense counsel to waive Alsanea's use of the interpreter once one had been appointed. This involves a question of law, over which this Court exercises free review. *See State v. O'Neill,* 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

The right to an interpreter is codified in I.C. § 9–205 and I.C.R. 28. The language used by both the statute and the rule is nearly identical and provides that in an action in which any witness or party does not understand or speak the English language, the court shall appoint a qualified interpreter to interpret the proceedings to and the testimony of such witness or party. Neither the statute nor the rule addresses whether a defendant's right to an interpreter can be waived or the requirements for doing so.

Several courts have addressed the issue of a defendant's waiver of his or her right to an interpreter. In *State v. Neave,* 117 Wis.2d 359, 344 N.W.2d 181, 186 (1984), the defendant spoke exclusively Spanish and very little, if any, English. Although an interpreter was appointed to assist the defendant at his preliminary hearing and arraignment, there was no interpreter appointed at his trial or sentencing. On appeal from the denial of the defendant's application for post-conviction re-

lief, the Wisconsin Supreme Court dealt with the issue of whether a defendant's right to an interpreter—which was not provided by the federal or state constitutions or by state statute but, rather, was guaranteed by notions of fairness—may be waived by the defendant's attorney or was to be treated as a personal right which may only be waived by the defendant.[2] After examining those fundamental rights which could only be waived by the defendant personally—whether to plead guilty, request a trial by jury, forego the assistance of counsel, or obtain the assistance of counsel and refrain from self-incrimination—and other rights that essentially fell under the category of tactical decisions entrusted to the defendant's counsel, the court concluded that any waiver of the defendant's right to an interpreter must be made voluntarily in open court on the record and not by the defendant's attorney.

In *People v. Mata Aguilar*, 35 Cal.3d 785, 200 Cal.Rptr. 908, 677 P.2d 1198 (1984), the defendant understood and spoke limited English. An interpreter was appointed to assist the defendant at trial. However, during the course of the proceedings, the defendant's interpreter was borrowed by the prosecution to interpret the testimony of two prosecution witnesses for the court and jury. Defense counsel, without consulting with the defendant, acquiesced in allowing the prosecutor to use the defendant's interpreter.

On appeal from the defendant's judgment of conviction, the California Supreme Court noted that the defendant's right to an interpreter was provided by the California Constitution and that the constitution required the interpreter to aid the defendant during the whole course of the proceedings. Because the interpreter did not assist the defendant during the entire course of his trial, the court determined that the defendant was denied a constitutional right. The court further determined that because the defendant was denied a constitutional right by the borrowing of his interpreter, reversal of the defen-

dant's conviction was required unless the defendant waived his right. After reviewing the record, the court noted that there was no indication that the defendant voluntarily and intelligently waived his constitutional right to an interpreter. The court held that because the right to an interpreter was guaranteed by the state's constitution, it could not validly be waived without an affirmative showing on the record of an intelligent and voluntary waiver by the defendant. The mere acquiescence by defense counsel was insufficient to waive the defendant's right to the assistance of his interpreter.

A similar conclusion was reached in *State v. Rodriguez*, 294 N.J.Super. 129, 682 A.2d 764 (1996). There again, the defendant understood and spoke very little English. The defendant was not afforded an interpreter at the first two of his three hearings and, in fact, his defense counsel waived the defendant's right to a court interpreter at the second hearing. On an intermediate appeal from the municipal court, the superior court held that the right to an interpreter was guaranteed by the confrontation and assistance of counsel clauses of both the federal and state constitutions. The court referred to 28 U.S.C. § 1827(f)(1), which is the federal statute governing the appointment of interpreters and which expressly requires that a defendant's waiver of his or her right to an interpreter can only be effective if done personally on the record after an opportunity to consult with counsel. As a result, the court held that a defendant must explicitly state on the record that he or she is waiving his or her right to an interpreter.

█ From a review of the cases above, the general consensus appears to be that a defendant must waive his or her right to an interpreter personally on the record and that such a waiver must be voluntary, regardless of the source of that right. However, the case at bar is distinguishable from those cases in which the courts found that the

---

**2.** The right to an interpreter in Wisconsin is now provided by statute and includes the requirement that a defendant may waive his or her right to an interpreter if the court advises the person of the nature and effect of the waiver and determines on the record that the waiver has been made knowingly, intelligently, and voluntarily. *See* WIS. STAT. § 885.38 (2001). Other states' statutes similarly require that a defendant's waiver be voluntarily and intelligently made. *See, e.g.,* WASH. REV. CODE § 2.43.060 (1989).

defendant's right to an interpreter was waived and that such waiver was error. Unlike the situations faced by the defendants in *Neave, Mata Aguilar,* and *Rodriguez,* where the defendants did not have any access to an interpreter, Alsanea was not deprived of his interpreter's assistance. Indeed, after Alsanea's attorney advised the district court that Alsanea wished to have the questions and answers in English, the district court nevertheless required Alsanea's interpreter to be physically near Alsanea in the event he needed assistance. Having appointed an interpreter to be readily available to assist Alsanea if necessary, the district court was under no obligation to constantly monitor the use which Alsanea and trial counsel made of the interpreter. *See Cadet v. State,* 809 So.2d 43, 45 (Fla.Ct.App.2002) (Although a defendant's right to an interpreter is waivable only by the defendant personally and not by the defendant's attorney, where the trial court made an interpreter available to the defendant it was under no obligation to monitor the defendant's use of the interpreter.). Therefore, we conclude that Alsanea's right to an interpreter was not waived and that no error of the district court has been shown.

### C. Requested Jury Instruction

At the close of trial, Alsanea requested that the district court instruct the jury that it could not find him guilty of both counts of aggravated assault on a law enforcement officer unless it found that both crimes arose out of separate and distinct acts and that each act was accompanied by a criminal intent. The district court refused, stating that Alsanea's requested instruction was adequately covered by another instruction which advised the jury that it must consider each count of aggravated assault separately and that the state must prove each count beyond a reasonable doubt. On appeal, Alsanea asserts that it was not completely clear whether his actions were divisible into separate events and that his requested instruction should have been given according to this Court's holding in *State v. Spurr,* 114 Idaho 277, 755 P.2d 1315 (Ct.App.1988).

In determining whether a requested jury instruction should have been given, the reviewing court must examine the instructions that were given and the evidence that was adduced at trial. *State v. Johns,* 112 Idaho 873, 881, 736 P.2d 1327, 1335 (1987). The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App. 1993).

A trial court must charge the jury with all matters of law necessary for their information. I.C. § 19–2132(a). Thus, a defendant is entitled to instructions on rules of law material to the determination of the defendant's guilt or innocence. *State v. Fetterly,* 126 Idaho 475, 476, 886 P.2d 780, 781 (Ct.App.1995). A requested jury instruction on governing law must be given where a reasonable view of the evidence would support the defendant's legal theory, the subject is not adequately covered by other instructions given to the jury, and the instruction does not constitute an impermissible comment on the evidence. *Id.* at 476–77, 886 P.2d at 781–82.

In *Spurr,* the defendant was stopped by two police officers after they noticed him staggering along the roadside. Spurr became belligerent when the officers stopped and questioned him, so they handcuffed him and placed him in their patrol vehicle. Spurr began kicking the inside of the vehicle. Fearing that Spurr might damage the vehicle's interior, the officers opened the door to restrain him. Spurr was somehow ejected from the vehicle. Upon hitting the ground, Spurr kicked one of the officers in the knee. Spurr was ultimately charged with obstructing a police officer, I.C. § 18–705, and battery upon a police officer, I.C. §§ 18–903, 18–915.

On appeal from his judgments of conviction, Spurr alleged that his separate convictions for battery and obstruction violated the double jeopardy provisions of the Fifth Amendment and the prohibition against multiple punishments for the same acts con-

tained in former I.C. § 18–301. This Court held that, because it was not entirely clear upon the record whether Spurr's actions were divisible into separate events, the trial court was required to instruct the jury that it could not find Spurr guilty of both offenses unless it was convinced beyond a reasonable doubt that both alleged crimes arose out of separate and distinct acts, each accompanied by criminal intent. This Court specifically declined to reach Spurr's Fifth Amendment question and, instead, based its reasoning solely upon the statutory ground.

Idaho Code Section 18–301 was repealed on February 13, 1995. See 1995 Idaho Session Law, ch. 16, § 1. The state contends that, because the basis of the Court's holding in Spurr is no longer the law, Alsanea's requested jury instruction was not an accurate statement of the law and that the district court did not err by refusing to give it. Alsanea responds that, although I.C. § 18–301 was repealed, his requested jury instruction was still an accurate statement of the law because the United States and Idaho Constitutions also protect against double jeopardy.

Assuming, without deciding, that Alsanea's requested jury instruction was an accurate statement of the law, Alsanea was not entitled to have the district court give it. Offenses committed against multiple victims are not the same, for double jeopardy purposes, even though they may arise from the same criminal episode. See State v. Pratt, 125 Idaho 546, 560, 873 P.2d 800, 814 (1993). Where a single act of violence is committed with an intent to harm more than one person or with means likely to harm more than one person, and results in multiple victims, multiple punishments are warranted and permitted. State v. Lowe, 120 Idaho 391, 393, 816 P.2d 347, 349 (Ct.App.1991). A defendant who intentionally threatens several persons with injury or death is viewed as having acted upon each of the resulting victims. See id. The federal constitutional prohibition against double jeopardy does not apply under these circumstances. See State v. James, 631 P.2d 854, 856 (Utah 1981). Because we conclude that the federal constitutional prohibition is inapplicable, we hold that the Idaho

constitutional prohibition also does not apply. See State v. McKeeth, 136 Idaho 619, 624, 38 P.3d 1275, 1280 (Ct.App.2001). Further, the district court did instruct the jury that it was required to consider each count of aggravated assault separately. Hence, we conclude that Alsanea was not entitled to have the district court give his requested jury instruction and that no error has been shown in the district court's refusal to do so.

### D. Sentence Review

Alsanea next asserts that his sentences are excessive in light of his lack of prior criminal convictions; support of friends and family; positive attributes; and impaired capacity to appreciate the criminality of his conduct. An appellate review of a sentence is based on an abuse of discretion standard. State v. Burdett, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. State v. Brown, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. State v. Nice, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." State v. Toohill, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. State v. Reinke, 103 Idaho 771, 772, 653 P.2d 1183, 1185 (Ct.App.1982). Applying these standards, and after reviewing the record in this case, we conclude that Alsanea's sentences are not unreasonable or excessive and that no abuse of discretion has been shown.

## E. Rule 35 Motion

Alsanea argues that the district court erred in denying his Rule 35 motion for correction of an illegal sentence. When pronouncing Alsanea's sentence, the district court stated:

I'm going to impose a sentence of ten years fixed on Count 1, ten years fixed consecutive on Count 2, fifteen years consecutive but indeterminate on the firearms charge; one year consecutive indeterminate on the domestic violence protection order; six months consecutive indeterminate on the remaining misdemeanor.

Alsanea's judgment of conviction likewise provided that for the firearm enhancement, Alsanea was sentenced to a "indeterminate period of custody of up to fifteen (15) years consecutive" to his sentence for the second count of aggravated assault.

Alsanea filed a Rule 35 motion to correct an illegal sentence, claiming that the district court erroneously imposed a separate, consecutive sentence for his use of a firearm during commission of the aggravated assaults, rather than enhancing one of his aggravated assault sentences. The district court denied Alsanea's motion and Alsanea appeals, still asserting that his sentence for the use of a firearm arm is illegal.

■ An illegal sentence under Rule 35 is one in excess of a statutory provision or otherwise contrary to applicable law. *State v. Lee,* 116 Idaho 515, 516, 777 P.2d 737, 738 (Ct.App.1989). The legality of a sentence is question of law over which we exercise free review. *Id.* The term "consecutive" is inappropriate when referring to a sentence enhancement for use of a firearm. *State v. Camarillo,* 116 Idaho 413, 414, 775 P.2d 1255, 1256 (Ct.App.1989). It may connote, inaccurately, the existence of two separate sentences. *Id.* It is well established that, regardless of the terminology employed, a firearm enhancement is part of a single sentence. *Id.* Although the enhancement must be specifically identified for appellate review, the base sentence and the enhancement should be construed as one continuous sentence. *Id.* Accordingly, the mere choice of a possibly inappropriate word does not give rise to Rule 35 relief, absent a showing that

it has caused the enhanced sentence to be administered improperly. *Id.* If a defendant's sentence is administered improperly, he or she may seek relief by petitioning for a writ of habeas corpus. *Id.*

■ In the instant case, the maximum possible sentence for aggravated assault on a police officer is ten years. *See* I.C. §§ 18–906, –915(b). If that sentence is enhanced for use a firearm, the maximum possible term a defendant could be sentenced to is twenty-five years. *See* I.C. § 19–2520. If Alsanea's sentences for the second count of aggravated assault and the firearm enhancement are construed as one continuous sentence, as they must be, the practical effect is the same as if Alsanea had been sentenced to a unified term of twenty-five years, including the firearm enhancement, with a minimum period of confinement of ten years. Such a sentence is a permissible sentence under the applicable statutes. Hence, Alsanea's sentences were not illegal for purposes of Rule 35 despite the district court's terminology when pronouncing them. Additionally, Alsanea has not argued that use of the term "consecutive" is causing his sentences to be administered improperly. Therefore, we conclude that Alsanea was not entitled to relief under Rule 35 and the district court did not abuse its discretion by denying his Rule 35 motion. If, and when, there comes a time when Alsanea's sentences are inappropriately administered, his remedy would be to petition for a writ of habeas corpus. *See Camarillo,* 116 Idaho at 414, 775 P.2d at 1256.

## III.

## CONCLUSION

The prior bad acts evidence was not relevant to the officers' well-founded fear of imminent violence or to Alsanea's intent in committing the aggravated assaults. Therefore, the evidence was not admissible. However, there was substantial evidence, aside from the irrelevant prior bad acts evidence, demonstrating Alsanea's guilt. We are convinced beyond a reasonable doubt that the complained-of testimony did not contribute to the

jury's verdicts and that the error in admitting the testimony was harmless.

Alsanea has failed to show that his right to an interpreter was waived. The district court appointed an interpreter to assist Alsanea and was under no obligation to monitor his use of the interpreter once one was made available to assist Alsanea. Therefore, we conclude that no error of the district court has been shown.

Even assuming that Alsanea's requested jury instruction was an accurate statement of the law, it was not applicable to the type of charges and alleged facts involved here. Additionally, the district court did instruct the jury that it was required to consider each count of aggravated assault separately. Accordingly, we conclude that Alsanea was not entitled to have the district court give his requested jury instruction and no error has been shown in the district court's refusal to do so.

After reviewing the record and applying the standards applicable to this Court's review of a sentence, we conclude that Alsanea's sentences are not unreasonable or excessive and that no abuse of the district court's discretion has been shown. Additionally, because Alsanea's sentence was not illegal for purposes of Rule 35, despite the district court's imposition of a "consecutive" indeterminate fifteen-year term for use of a firearm, and no argument has been made that Alsanea's sentence is being administered improperly, we also conclude that Alsanea was not entitled to relief under Rule 35 and that the district court did not abuse its discretion by denying his Rule 35 motion.

Alsanea's judgments of conviction and sentences for two counts of aggravated assault on a law enforcement officer, use of a firearm during commission of a crime, violation of a no-contact order, and unlawful entry are affirmed. The order of the district court denying Alsanea's Rule 35 motion to correct an illegal sentence is also affirmed.

Judge GUTIERREZ concurs.

Chief Judge LANSING, concurring in the result.

I respectfully disagree with the majority view that the evidence of Alsanea's harassment of his former girlfriend, particularly evidence that he had previously threatened to shoot her and their son, was irrelevant and therefore erroneously admitted. In my view, this evidence was relevant on the issue of Alsanea's intent when he pulled the gun from his waistband.

Alsanea's past threats toward the girlfriend were not isolated incidents unrelated to the behavior for which he was charged with assault on the officers. Rather, they were part of an ongoing course of harassment that was still continuing on the evening of December 6, 2000, when the police intervened and thereby became the new focus of Alsanea's threatening behavior. The evidence of Alsanea's earlier, but related, conduct suggests that he was not carrying the weapon on the night in question for some innocent purpose but for the purpose of using it to intimidate or do violence. It supports an inference that when he reached for the gun, it was Alsanea's intent to threaten the officers. Therefore, the evidence was relevant, particularly in view of Alsanea's claim that he grasped the weapon in order to hand it to the officers. Under Idaho Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The testimony about Alsanea's past threats to shoot the girlfriend and the child meets this threshold. Accordingly, I would hold that the evidence was not erroneously admitted.

I otherwise concur with the lead opinion.