**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50548**

| | |
|---|---|
| STATE OF IDAHO,<br><br>        Plaintiff-Respondent,<br><br>v.<br><br>BRYAN RAY PALMER,<br><br>        Defendant-Appellant. | )<br>)  Filed:  June 26, 2025<br>)<br>)  Melanie Gagnepain, Clerk<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Appeal from the District Court of the First Judicial District, State of Idaho, Benewah County. Hon. Barbara Duggan, District Judge.

Judgment of conviction for two counts of aggravated assault, one count of burglary, and unified sentence of twenty years with ten years determinate, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Bryan Ray Palmer appeals from his conviction for two counts of aggravated assault and one count of burglary. Palmer claims there was insufficient evidence to sustain the conviction for one of the counts of aggravated assault and that the district court erred in excluding testimony admissible under the excited utterance exception to the hearsay rule. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Palmer lived in a trailer located on Roger Painter's property. The main house on the property was occupied by Painter, Painter's significant other, and Mary Lang, who was a tenant. Palmer and Lang had a brief romantic relationship. Sometime after the relationship ended, Palmer and Painter were involved in an altercation in Painter's house. During the altercation with Painter, Palmer discharged a firearm next to Painter's ear. Law enforcement responded to a 911 call by

1

Lang that a firearm had been discharged in Painter's house. Palmer was arrested and charged with two counts of aggravated assault, one against Lang and one against Painter, with a deadly weapon enhancement. Idaho Code § 18-905(a). Palmer was also charged with burglary for entering Painter's home with intent to commit the assaults. I.C. § 18-1401.

At trial, Painter testified that Palmer pounded on Painter's door multiple times, and demanded to see Lang. Painter told Palmer that Lang was not feeling well and to come back in the morning. Palmer said to "Wake the bitch up" a few times, proceeded to push his way through the door, and putting his forehead against Painter's forehead said, "What are you going to do?" After pushing Palmer back outside, Painter told Palmer to leave. Palmer returned moments later, pounding on the door and demanding for Painter to "Wake that thieving, lying bitch up. I'm gonna put a bullet in her heart." Lang was in the home at the time, resting in her room at the other side of the house. Lang was awakened by the noise and looked out of her room to see both Palmer and Painter at the front door. Palmer became more agitated and got into a physical altercation with Painter during which Palmer headbutted Painter and attempted to run into Lang's room. Painter grabbed Palmer and Palmer continued shouting until, eventually, Palmer pulled out his handgun and fired it next to Painter's ear. Painter testified that he did not see the handgun until after Palmer fired it. The bullet went through the ceiling. Palmer again tried to run into Lang's room and Painter stopped him. Eventually, Painter got Palmer back out of the house and onto the front porch where Palmer appeared to calm down. Lang testified that she had seen both altercations, and after Palmer fired his handgun, she went back into her room, escaped through her window, and called 911.

Palmer testified in his own defense and generally denied physically fighting with Painter or firing a handgun. In Palmer's version of the events, he stated that he had been drinking that day in his trailer. He then went to Painter's house to pick up his shop vac and had a conversation with Painter. The conversation "became heated" and Palmer left the house without his shop vac. Palmer returned moments later in another attempt to get his shop vac, but no one answered. While he was walking back to his trailer, Palmer claims to have heard a loud noise from inside Painter's house which he said sounded like a gun shot. Within a few minutes after the shot, Palmer claims that Painter came up to him and handed him a gun and holster. Palmer was asked whether Painter said anything to him at this time, to which the State objected on hearsay grounds. The district court sustained the objection. However, a law enforcement officer testified that, on the night of

2

the altercation, Palmer told him Painter came out of the house, gave a gun and holster to Palmer, and said something to the effect of, "[Lang] is angry and he might need a firearm."

The jury found Palmer guilty on all charges. Palmer appeals.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The trial court has broad discretion in determining the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Palmer claims the evidence presented at trial was insufficient to support the jury's guilty verdict as to Count II, aggravated assault against Painter. Palmer also argues that he should have been allowed to testify regarding statements allegedly made by Painter under the excited utterances exception to the hearsay rule. The State argues that sufficient evidence supports the aggravated assault conviction; Palmer fails to show that Painter's statement constituted an excited utterance; and any error from exclusion of Painter's statement was harmless.

3

**A.      Sufficiency of the Evidence**

Palmer claims there was insufficient evidence to sustain the guilty verdict for aggravated assault against Painter.  Palmer contends that any fear Painter experienced from the fact that the gun was fired could not have arisen from a threat that Palmer intentionally directed at Painter.  Palmer also argues that the evidence does not support a finding that Palmer intended to threaten Painter because:  (1) Painter did not see the gun until after it was fired; and (2) the gun was fired over Painter's shoulder, rather than toward Painter himself.  The State argues that the fact that Painter did not see the gun until after it was fired does not preclude an inference of intent to harm Painter.

Idaho Code § 18-901 defines assault as:

> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

Idaho Code § 18-905(a) states that aggravated assault is an assault, "[w]ith a deadly weapon or instrument without intent to kill" and I.C. § 18-905(d) defines a "deadly weapon or instrument" to include any "firearm, though unloaded or so defective that it can not be fired."  Under I.C. § 18-901(b), the State must prove an intent to threaten, by word or act, to do violence to another.  *State v. Larson*, 158 Idaho 130, 136, 344 P.3d 910, 916 (Ct. App. 2014).  The State is not required to prove the defendant had specific intent to cause apprehension in the victim but must prove that the intentional threat by the defendant was the source of the victim's well-founded fear that such violence was imminent.  *State v. Cudd*, 137 Idaho 625, 628, 51 P.3d 439, 442 (Ct. App. 2002).  Lastly, intent under I.C. § 18-901(b) may be inferred from the defendant's conduct or circumstantial evidence.  *State v. Pole*, 139 Idaho 370, 373, 79 P.3d 729, 732 (Ct. App. 2003).

Both Painter and Lang testified at trial that Palmer came to the house, loudly knocked on the door, and repeatedly yelled "Wake the bitch up."  Painter testified that Palmer put his forehead against Painter's forehead, pushed his way through the doorway, and said, "What are you going to do?"  Lang testified that she saw Palmer head-butting Painter and heard Palmer yell, "I'm going to kill the bitch."  As the altercation escalated, both Painter and Lang testified that Palmer continued to yell, drew his gun, and shot towards the ceiling next to Painter's left ear.  Palmer had

4

his hands on Painter at the time he fired the gun and had been attempting to hit Painter just prior to the discharge.

The jury was instructed:

In order for the defendant to be guilty of Aggravated Assault against Roger Painter, the state must prove each of the following:
1. On or about January 29, 2021,
2. in the state of Idaho,
3. the defendant BRYAN RAY PALMER committed an assault upon Roger Painter,
4. by pushing his way into his home, and saying I'm going to kill that bitch, *and firing a round into the ceiling*, and
5. the defendant committed that assault with a deadly weapon or instrument.

(Emphasis added.) The jury was also given an instruction quoting I.C. § 18-901 verbatim.

Palmer cites to *State v. Alsanea*, 138 Idaho 733, 69 P.3d 153 (Ct. App. 2003) and *State v. Dudley*, 137 Idaho 888, 55 P.3d 881 (Ct. App. 2002), to support the proposition that the mere act of discharging a firearm near the victim, even during a physical altercation, is not enough to sustain Palmer's conviction for aggravated assault. However, our holdings in *Alsanea* and *Dudley* are distinguishable as applied to the facts of this case.

First, in *Alsanea* we addressed the issue, under Idaho Rule of Evidence 404(b), whether evidence of the Alsanea's prior bad acts of stalking and threatening his girlfriend were relevant to the law enforcement officer's well-founded fear of the assault. *Alsanea*, 138 Idaho at 739, 69 P.3d at 159. We held that the prior bad acts of stalking and threatening by Alsanea toward his girlfriend were irrelevant to the officer's fear of the assault. *Id*. However, Alsanea's convictions were affirmed based on substantial evidence of his intent, i.e., Alsanea's act of pulling the firearm from his waistband and aiming it at the officers. *Id*. at 740, 69 P.3d at 160. While we concluded that the well-founded fear of an assault victim "must arise from the doing of the act in question," we did not hold that an aggravated assault conviction could not be sustained if the firearm was discharged near the victim or that the firearm must first be pointed at the victim in order to be considered a viable threat under I.C. § 18-901(b). *Alsanea*, 138 Idaho at 739, 69 P.3d at 159.

In *Dudley*, this Court noted the intent element for aggravated assault under I.C. § 18-901(b) requires an "intent to make a threat by word or act and does not arise simply by the commission of a negligent act." *Dudley*, 137 Idaho at 891, 55 P.3d at 884. However, we further noted that I.C. § 18-901(b) requires only that the State prove an intent to make a threat and does not otherwise require the State to prove a specific intent to create apprehension in the victim. *Id*. The Court did

not establish that a perpetrator of aggravated assault must use the weapon in a particular manner to demonstrate intent by threat.

Here, the evidence is sufficient to support the jury's guilty verdict. First, to satisfy the well-founded fear of an assault element, the victim's fear "must arise from the doing of the act in question," *Alsanea*, 138 Idaho at 739, 69 P.3d at 159. Palmer asserts that any evidence of Painter's fear after the gun was fired was insufficient to support a conviction because, he argues, the act was not included within the charging document. Specifically, Palmer states: "As an initial matter, this fear which occurred *after* the gun was fired was not included within the scope of the charged criminal conduct, which only included allegations of conduct *up until* the gun was fired." We do not read the charging document to be so limited. As it relates to the aggravated assault charge regarding Painter, the information alleged that Palmer:

> intentionally, unlawfully, and with apparent ability threaten by word or act to do violence upon the person of Roger Painter, with a deadly weapon, to wit: a semi-automatic pistol, by pushing his way into his home, and saying, I'm going to kill that bitch, *and firing a round into the ceiling, which created a well-founded fear in Roger Painter*, that such violence was imminent.

(Emphasis added.) The highlighted language includes the act of firing the gun as part of the source of Painter's well-founded fear. By virtue of the charge and corresponding instruction, the jury was required to find the act of "firing a round into the ceiling" was part of the basis for a conviction. The fact that Painter did not see the gun until after it was fired is not dispositive. Idaho Code § 18-901(b) requires the threat of violence to be coupled with an apparent ability to do so, and that the defendant do some act which creates a well-founded fear in the victim that such violence is imminent. Painter testified that, after the shot, he knew it was a gun, Palmer was ranting and raving, and he "assumed that [Palmer] might shoot me." Along with Palmer's threatening and physical conduct during the altercation, Painter's perception of the gunshot next to his head, and his observation of the gun after the fact, would reasonably create a fear that Palmer had an ability to harm Painter with the firearm.

Next, Palmer argues that the firing of the handgun next to Painter's ear cannot support a determination that Palmer exhibited an intent to assault or threaten Painter with a deadly weapon, particularly since Painter did not see the firearm before the shot. Testimony established that Palmer was generally threatening and aggressive during the altercation with Painter. Palmer, pushed his way through Painter's door, and putting his forehead against Painter's forehead said, "What are you going to do?" Palmer and Painter were entangled, Palmer was yelling threats,

attempting to hit Painter, and fired the handgun next to Painter's head. When viewed in the light most favorable to the prosecution, the evidence of Palmer's conduct towards Painter, including discharging the firearm, is sufficient for the jury to conclude that Palmer intended to threaten Painter by his actions. Further, the evidence surrounding the discharge of the firearm shows this was not simply a negligent act, and that Palmer intentionally drew the weapon to further his goal of harming another. While Palmer may have been verbally threatening to shoot Lang, the circumstances surrounding his conduct and altercation with Painter are sufficient to infer that Palmer threatened harm to Painter, and that his use of the firearm during the altercation made the risk of imminent harm to Painter more likely. While Lang witnessed the altercation, there is no evidence that Palmer saw her before firing the shot; the shot went into the ceiling, so it was not obviously directed only toward Lang. Even so, Palmer's intent to assault Lang does not negate an inference that Palmer fired the shot to get Painter to back off and cease his efforts to protect Lang. Intent under I.C. § 18-901(b) may be inferred from the defendant's conduct or circumstantial evidence. *Pole*, 139 Idaho at 373, 79 P.3d at 732. Palmer has failed to show that the evidence presented at trial was insufficient to support his conviction for aggravated assault against Painter.

**B.      Excited Utterance**

Palmer argues that the district court erred in precluding his testimony regarding statements made by Painter after a shot was fired in his house and he exited the house and encountered Palmer. Palmer contends the testimony as to statements made to him by Painter should have been admitted as excited utterances. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. Excited utterances are admissible as an exception to the rule against hearsay. An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." I.R.E. 803(2). The excited utterance exception has two requirements: (a) there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer; and (b) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. *State v. Ogden*, 171 Idaho 843, 855, 526 P.3d 1013, 1025 (2023).

During Palmer's testimony on direct examination, he testified that he was walking back to his trailer after attempting to retrieve his shop vac from Painter when Palmer heard a gunshot from inside Painter's house. A few minutes after the gunshot, Painter came out of the house and stopped Palmer. At that point, Palmer testified that Painter gave Palmer the holster and the gun. When Palmer attempted to testify as to what Painter allegedly said to Palmer, the State objected on hearsay grounds. The district court sustained the objection and did not allow Palmer to testify to Painter's statements any further. However, during the State's case-in-chief, a law enforcement officer testified that he had taken a statement from Palmer that night in which Painter allegedly told Palmer that "[Lang] is angry and he might need the firearm." Palmer argues the circumstances demonstrate that Painter was experiencing a spontaneous reaction to the gunshot from inside the house and that the statement made to Palmer was made while Painter was under the stress of the startling event.

The district court did not abuse its discretion in sustaining the State's hearsay objection to Palmer's testimony regarding the statements. Based on Palmer's testimony about the circumstances surrounding the statements allegedly made by Painter, Painter's actions of giving Palmer the holster and the gun and suggesting that he might need the weapon to defend himself demonstrate a reflective thought process and not a spontaneous reaction. Even if a shot being fired is a startling event, Palmer testified that the alleged statements were made a few minutes after the shot. That Painter allegedly brought Palmer a gun and holster suggests planning and reflective thought, not an uncalculated reaction to the event. Palmer fails to show that the foundation he proffered established an occurrence or event sufficiently startling to render inoperative the normal reflective thought process of an observer and that the statement at issue was a spontaneous reaction to the occurrence or event and not the result of reflective thought.

Even if the district court erred, the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Palmer testified to his version of events. The purported statements of Painter about the situation after the fact are not shown to be important in Palmer's defense. In

8

other words, a gunshot went off in Painter's house and Palmer, being outside, had nothing to do with it and that was conveyed through his testimony. Further, the purported statement by Painter was presented to the jury through the law enforcement officer's testimony during the State's presentation of evidence. Palmer told the officer that Painter came out of the house, gave a gun and holster to Palmer, and said something to the effect of "[Lang] is angry and he might need a firearm." Thus, the substance of the excluded testimony was presented to the jury. Palmer has not shown reversible error in the exclusion of the proposed testimony.

## IV.

## CONCLUSION

Palmer has failed to show the evidence at trial was insufficient to support the conviction for aggravated assault against Painter. Palmer has also failed to show the district court abused its discretion in sustaining the objection to Palmer's testimony regarding Painter's statements. Therefore, Palmer's judgment of conviction and sentence are affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.